McLAUGHLIN, Respondent, vs. MARSTON and another, Appellants.

*January 19 — February 3, 1891.*

*Sale of chattels: Where delivery to be made: Evidence: Court and jury.*

The defendants at La Crosse ordered the plaintiff in Chicago to ship to them ten cases of coffee. The plaintiff delivered the coffee to a carrier in Chicago, consigned to the defendants, and paid the freight thereon. Five of the cases were taken from the carrier in Chicago under an attachment against the defendants, and were never delivered at La Crosse. In an action for the purchase price the defendants alleged nondelivery of the five cases. *Held,* (1) that parol evidence was admissible to show a continuing contract between the parties, at the time the coffee was ordered, that all coffee bought by the defendants should be delivered in La Crosse; and (2) that upon the evidence in this case the question as to where the delivery was to be made was one for the jury.

APPEAL from the Circuit Court for *La Crosse* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was commenced by the plaintiff, who did business in Chicago under the name of *Wm. F. McLaughlin & Co.,* against *Daniel Marston* and *Daniel W. Marston,* who were doing business in La Crosse under the name of *Marston*

*& Co.*, to recover the purchase price of ten cases of coffee, containing 1,000 pounds, which the plaintiff claimed he sold and delivered to the defendants on the 2d day of November, 1887, to be paid for in sixty days after delivery, at twenty-four cents per pound. The defendants answered as follows:

"For his amended answer defendant *Daniel W. Marston* says that on or about the year 1884, at La Crosse, Wis., defendants contracted with the plaintiffs through their agent, H. H. Harries, to purchase from that time on XXXX coffee of the plaintiffs, to be delivered on arrival at the depot in the city of La Crosse, and that plaintiffs agreed to deliver and lay down said coffee at said place whenever in the future said coffee might be ordered by the defendants, at the price denoted by certain written or printed slips or offers to sell; that by said agreement plaintiffs were to send from time to time a quotation slip or offer to deliver coffee, showing the price of said coffee delivered at the depot in La Crosse and there laid down; that said contract has been in force since 1885, and was in force at the times herein mentioned, without change or modification as to place and manner of delivery and method of making orders, though subsequently modified as to discounts on bills; that under said agreement plaintiffs sent said slips or offers to sell from time to time, and defendants instructed plaintiffs to deliver said coffee; that from said date, and up to October, 1887, in the manner set forth, defendants purchased great quantities of the coffee; that all of said coffee was delivered to the defendants at the depot in La Crosse, and nowhere else; that on or about October 31, 1887, plaintiffs received one of said slips or offers to sell, stating the price of said coffee, and under said contract and in the manner customary between the parties instructing plaintiffs to send said cases of XXXX coffee, to be delivered at the depot in La Crosse, Wis.; that *William F. McLaughlin & Co.* delivered, at the depot in La Crosse, five cases of said coffee, at about said

date, which coffee was worth the sum of $119.40; that *William F. McLaughlin & Co.* neglect and refuse to fulfil their contract for five cases of said ten, and have never delivered or offered to deliver said five cases, as required by their contract; that on or about January 7, 1887, defendants duly tendered *William F. McLaughlin & Co.* the sum of $119.40 on said claim for coffee, which said *McLaughlin & Co.* refused; that defendants have stood ready and willing to pay said sum to *William F. McLaughlin & Co.*, or to any one representing them, and have duly paid same into said court for the benefit of *William F. McLaughlin & Co.* or their assigns. The defendant denies each and every allegation of plaintiffs' complaint not herein admitted."

The whole controversy in this action is upon the question of the delivery of five cases of the coffee claimed to have been sold and delivered by the plaintiff to the defendants at the time mentioned. The following stipulation of the parties discloses the whole matter:

" It is hereby stipulated that the order dated October 31, 1887, for ten cases XXXX coffee, to *Wm. F. McLaughlin & Co.*, purporting to be signed by *Marston & Co.*, and hereto attached, is the original order given by the [defendants and received by the] plaintiffs by due course of mail; that the receipt, also attached, of the C., M. & St. P. R. Co., by L. Campbell, agent, dated November 2, 1889, is the original receipt of said railroad company for the goods described in the complaint, which were on that day delivered to said railroad company, consigned and directed to *Marston & Co.*, La Crosse, Wis., and the freight charges on same were paid by said plaintiff; that five cases of said goods, after being delivered by the plaintiff to the said railroad company for shipment, were seized at Chicago, Ill., about November 2 or 3, 1887, and on an attachment in favor of J. D. McNab against said *Marston & Co.*, and taken from the possession of said

railroad company, and were never delivered to said *Marston & Co.* at the city of La Crosse, where they were directed and consigned; that the letters hereto attached, and signed by *Marston & Co.* and L. W. Campbell, were written by the respective parties who purport to have signed the same, and were received by due course of mail by the parties to whom they were directed; that said plaintiffs duly notified said defendants of said shipment within a reasonable time, and that the price and value of said goods was the sum of $240 for the entire bill, one half of which was received by the defendants at La Crosse, Wis.; that defendants were entitled to sixty cents, paid for telegram to H. H. Harries."

The correspondence referred to in said stipulation is immaterial to the question raised by the defendants. It relates to the attachment of the coffee by McNab, and is mostly in relation to the defense of said action; the plaintiff claiming that the defendants were interested in such action, and the defendants claiming that the five cases of coffee seized by McNab as the property of the defendants was not their property, but the property of the plaintiff until the same had been delivered to the defendants at La Crosse. The order sent to the plaintiff for the ten cases of coffee claimed to have been sold and delivered to the defendants, reads as follows: "La Crosse, Wis., October 31, 1887. *W. F. McLaughlin & Co.*— Gentlemen: Please ship us at once ten cases of XXXX coffee, and greatly oblige. Yours truly, Marston & Co." Upon the receipt of this order the plaintiff delivered the coffee to the St. Paul Railroad Company, at their depot in Chicago, consigned to the defendants at La Crosse, Wis., and paid the freight to the railroad company on the same to La Crosse. Five of the cases were never delivered to the defendants at La Crosse, but were taken out of the possession of the railroad company in Chicago by virtue of an attachment purporting to be issued in favor of an alleged creditor of the defendants.

McLaughlin vs. Marston and another.

The trial court directed the jury to return a verdict in favor of the plaintiff for the full amount claimed by him; and from the judgment entered on such verdict the defendants appeal.

For the appellants there was a brief by *Winter, Esch & Winter,* and oral argument by *Frank Winter.* They argued, among other things, that the contract being incomplete, parol evidence is admissible to show all its terms and the interest of the parties. 1 Greenl. Ev. sec. 284*a; Boynton Furnace Co. v. Clark,* 42 Minn. 335; *Beach v. R. & D. B. R. Co.* 37 N. Y. 457. The effect of an agreement to deliver at a particular place is to postpone the vesting of title until delivery at that place. Benj. Sales (Corbin's ed.), 333; *Sneathen v. Grubbs,* 88 Pa. St. 147, 150; *Devine v. Edwards,* 101 Ill. 138; *Comm. v. Greenfield,* 121 Mass. 40; *Sedgwick v. Cottingham,* 54 Iowa. 512; *Washburn I. Co. v. Russell,* 130 Mass. 543; *Council Bluffs I. Works v. Cuppey,* 41 Iowa. 104; *Steel Works v. Dewey,* 37 Ohio St. 242; *Smith v. Wheeler,* 7 Oreg. 49; *Corwith v. Colter,* 82 Ill. 585; *Krulder v. Ellison,* 47 N. Y. 40; *Higgins v. Murray,* 73 id. 252, 255; *Frost v. Woodruff,* 54 Ill. 155; Benj. Sales (Bennett's ed. 1888), 653. If the vendor undertakes to deliver to the vendee at a distance, the carrier is the vendor's agent. Benj. Sales (Bennett's ed. 1888), 647; *Perkins v. Eckert,* 55 Cal. 400. The intention as to delivery is a question for the jury. Newmark, Sales, 156; *Wigton v. Bowley,* 130 Mass. 252–254; *Smith v. Lynes,* 5 N. Y. 47. If the effect of a written contract, or the meaning of it, depends on facts *aliunde* in connection with the written language, or if it is obscure, the construction of it is for the jury. *Etting v. Bank of U. S.* 11 Wheat. 59; *Nat. Bank v. Dana,* 79 N. Y. 108; *Gardner v. Clark,* 17 Barb. 538; *Ganson v. Madigan,* 15 Wis. 144; *Bedard v. Bonville,* 57 id. 270, and cases cited.

*M. P. Wing,* for the respondent, cited Benj. Sales, secs.

517, 522; 1 Pars. Cont. (7th ed. bottom paging), 573 and
notes; *Magruder v. Gage*, 33 Md. 344; *S. C.* 3 Am. Rep.
177; *Charles v. Lasher*, 20 Bradw. 36; *Bliss v. Geer*, 7 id.
612; *Ranney v. Higby*, 4 Wis. 154; *Diversy v. Kellogg*, 44
Ill. 114; *Ellis v. Roche*, 73 id. 280; *Orcutt v. Nelson*, 1
Gray, 536, 542, 543; *Sarbecker v. State*, 65 Wis. 171.

TAYLOR, J.   After reading all the evidence in the record,
it seems to us that the contention of the defendants that
they had a continuing agreement with the plaintiff at the
time this coffee was ordered that all coffee bought of him
should be delivered to the defendants at La Crosse, is, to
some extent at least, supported by such evidence; and, this
being so, it seems to us that the learned circuit judge erred
in directing a verdict for the value of the ten cases of coffee
in favor of the plaintiff.   If the agreement was as defend-
ants contended, under the standing arrangement the plaint-
iff must have understood that the order did not justify him
in delivering it to defendants in Chicago, and putting them
to the risks of transportation to La Crosse, and that the
prepayment of the freight on the coffee was not an equiva-
lent to a delivery in La Crosse.

It is evident that the learned circuit judge had grave
doubts as to how the order in this instance ought to be
construed.   He says, among other things, before directing
a verdict for the plaintiff: "Is there any reason to think
that *Mr. Marston* thought of anything except he got them
here freight free?   Was not that what he expected?   It is
true the words may mean more.   The word 'delivery'
may mean more than that.   Habitual dealing throws no
light on this question whether they considered the delivery
to be complete so far as to change the title, and that is the
question in this case."   The learned judge then says that
his impression is that "the contract made by this order
ought to govern.   I am inclined to think that was all that

McLaughlin vs. Marston and another.

was meant by the contract that was made with Mr. Harries." The learned judge then takes from the jury the question as to what the contract was, as understood by the parties at the time, and directs a verdict for the plaintiff.

The learned judge evidently did not intend to hold that the order alone created a written contract between the parties as to the place of delivery, which could not be explained by parol evidence, or as to the price of the coffee, but he seems to have come to the conclusion that as, in the absence of any proof except the written order, the law would presume that the delivery to a carrier at the place of business of the vendor, consigned to the purchaser at his place of business, would be a delivery to him, there was not evidence enough given on the part of the defendants to justify a jury in finding that any other place of delivery was intended by the parties. In this view of the case we think the learned judge invaded the province of the jury. It was for the jury, and not the court, to say, under all the evidence in the case, where the delivery of the coffee was to be made. The defendants' claim that the coffee was not theirs by a delivery to the carrier at Chicago consigned to them, was made immediately upon hearing that a part of the coffee had been attached there as their property, and they have persisted in that claim ever since; and we think there is considerable evidence in the case tending to prove the contention of the defendants that all purchases of coffee made by the defendants from the plaintiff were to be delivered at La Crosse, and not at any other place, and that the order in this particular case, asking the plaintiff to send them the coffee in question, is in no way inconsistent with an agreement that the plaintiff should deliver it at La Crosse.

The evidence introduced by the defendants tending to show that in all their dealings with the plaintiff the delivery was made at La Crosse, and that there was a continuing

contract to that effect when this order was made, was admitted by the learned circuit judge as competent evidence in the case. That such evidence was competent is, we think, well supported by reason and authority. Bishop, in his work on Contracts, says: "When a custom is shown to have existed between the parties as to dealings between them, then the new transaction is *prima facie* presumed to be on the same basis as the former ones." Secs. 456–458. The rule as to when a delivery to a carrier constitutes a delivery to the vendee, is thus stated by Benjamin in his work on Sales: "Where the vendor is bound to send the goods to the purchaser, the rule is well established that delivery to a common carrier . . . is a delivery to the purchaser himself. If, however, the vendor should sell goods, undertaking to make the delivery himself at a distant place, thus assuming the risks of the carriage, the carrier is the vendor's agent." 2 Benj. Sales, sec. 1040; *Devine v. Edwards*, 101 Ill. 138. "If the thing agreed to be sold is to be sent by the vendor to the vendee, it is necessary to the perfection of the contract that it should be delivered to the purchaser or his agent." *The Venus*, 8 Cranch, 253, 257; *Comm. v. Greenfield*, 121 Mass. 40. In *Suit v. Woodhall*, 113 Mass. 391, 394, the court say: "There was evidence from which the jury might have found that the plaintiffs [the vendors] were to pay the freight, and the defendants asked the court to rule that, if the plaintiffs were to deliver the liquors at Lawrence, the sales were made at Lawrence. This instruction should have been given. Delivery to the carrier was a delivery to the defendants, if there was no agreement to the contrary; but if the parties agreed that the goods were to be delivered at Lawrence, it would not be a completed sale until delivery, and the laws of this state would apply to it." In this case the court seems to hold that the proof that the vendor was to pay the freight on the goods from the vendor's place of business to the place

of business of the vendee, was some evidence tending to prove an agreement on the part of the vendor to deliver the goods sold to the vendee at his place of business. In that case, if the sale was completed at Lawrence, the sale was void; but if completed by the delivery to a carrier in Kentucky, it would be valid, the article sold in that case being spirituous liquors. See, also, *Mand v. Trail*, 92 Ind. 521; *Pierson v. Hoag*, 47 Barb. 243; *Underhill v. Muskegon B. Co.* 40 Mich. 660.

In the case at bar it was therefore a material question whether the contract between the parties was for a delivery by the vendor to the vendees at La Crosse. If such was the contract, then the coffee attached by the supposed creditor of the defendants was not the property of the defendants, and its attachment was no excuse for its non-delivery by the plaintiff to the defendants at La Crosse. That the mere order to send the coffee, specifying the quality only and mentioning no place of delivery or price, is not such a contract in writing between the parties in regard to the coffee as excludes all explanation by parol or other evidence as to what the contract between the parties as to its delivery was, is also well settled by the authorities, and was recognized by the learned circuit judge on the trial. In addition to the authorities above cited, see *Boynton F. Co. v. Clark*, 42 Minn. 335; *Beach v. R. & D. B. R. Co.* 37 N. Y. 457; 1 Greenl. Ev. § 282, and cases cited. As there was evidence introduced in this case from which the jury might rightfully have found that the agreement was to deliver the coffee to the defendants at La Crosse, it was error for the court to direct a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.