VAN VALKENBURGH & SON V. MASON GREGG.

FILED JUNE 22, 1895.  No. 6004.

1. **Sales of Goods:** BREACH OF CONTRACT: DAMAGES: TENDER
OF DELIVERY.  A vendor of goods cannot recover damages on
account of the refusal of the vendee to accept, unless he tenders
delivery of the goods in accordance with the contract.

2. ———: ———: ———: DELIVERY.  Where a written contract
specifies a place of delivery, delivery must be tendered at that
place; and ambiguities in such written contract are to be solved
in the same manner as ambiguities in other writings.

3. ———: PLACES OF DELIVERY.  The shipment by a vendor at A
of goods consigned to himself at B, the vendor making a draft
for the price, and attaching the bill of lading thereto, is a tender
of delivery at the point to which the goods are shipped, and not
at the place of shipment.

4. ———: CONTRACTS: PLACES OF DELIVERY: EVIDENCE.  A con-
tract for the sale of goods was substantially as follows: "Bought
of M. G. five (5) cars new shelled corn, track Ohiowa or Tobias,
at forty-five (45) cents per bushel, his weights, billing of. same
to be given by December 10, 1890. [Signed,] V. & Son."
*Held*, That this was a contract for delivery at Ohiowa or Tobias,
the vendor to ship from either of those points to the vendee at a
point designated by him, and that compliance with such con-
tract was not proved by showing a shipment from one of those
points to a point designated by vendee, the goods being con-
signed to the vendor.

5. ———: ———: ———: WAIVER.  The fact that the vendee had
received a portion of the goods consigned to the vendor at the
point designated was a waiver only of the terms of delivery as
to the goods so received, and did not waive delivery of the re-
maining goods according to the contract.

ERROR from the district court of Lancaster county.
Tried below before HALL, J.

The facts are stated by the commissioner.

*Stewart & Munger*, for plaintiffs in error:

A delivery by a seller to a common carrier of property

billed to the proper destination, but consigned to the seller's order is not a delivery or tender of delivery to the purchaser. (*Torcheimer v. Stewart*, 65 Ia., 593; Newmark, Sales, secs. 147, 407.)

The failure to ship the grain promptly and the delay in furnishing the bill of lading justified the refusal to accept the property. (*Barber v. Taylor*, 5 M. & W. [Eng.], 526; *Robinson v. Brooks*, 40 Fed. Rep., 525; *Rommel v. Wingate*, 103 Mass., 327; *Hoffman v. King*, 58 Wis., 314.)

Where delivery is made by installments, the buyer's acceptance of the first installment will not debar him from rejecting on proper grounds the portions subsequently delivered. (Newmark, Sales, secs. 231, 232, 265; *Hubbard v. George*, 49 Ill., 275; *Cohen v. Platt*, 69 N. Y., 348; *Norrington v. Wright*, 115 U. S., 188.)

*Marquett, Deweese & Hall, contra.*

IRVINE, C.

On December 4, 1890, the parties to this action entered into a contract as follows:

"Bought of Mason Gregg five (5) cars new shelled corn, track Ohiowa or Tobias, at forty-five (45) cents per bushel, his weights, billing on same to be given by December 10, 1890.               VAN VALKENBURGH & SON."

It is agreed that the corn was shipped in large cars, three of which carried what the parties had understood as five cars.     On the 6th of December Van Valkenburgh & Son wrote Gregg as follows:

"Please ship us at Beaver City one large car new corn. Draw on us through First National Bank, Minden, and have it come direct here with invoice.     Parties are anxious for this car.               VAN VALKENBURGH & SON."

The car was shipped and was received by Van Valkenburgh & Son.     On the 10th of December the following letter was written by Van Valkenburgh & Son:

"Please ship at once a large car corn to us at Beaver City, and on Monday next load another large car to us at Beaver City. These three large cars that we have ordered will make the 2,500 bushels ordered and bought of you. Can you sell us more at same price? Would be pleased to hear from you how you understand these orders, and if you will ship them promptly.

"VAN VALKENBURGH & SON."

Gregg on receipt of this letter shipped the second car, and on the following Monday, being December 15, shipped the third car. The second car was received by Van Valkenburgh & Son. On the 15th, but after Gregg had shipped the third car, Van Valkenburgh & Son telegraphed him:

"Don't ship third car to Beaver City. Parties there refuse.          VAN VALKENBURGH & SON."

The car had already gone, and Van Valkenburgh & Son refused to receive it. Gregg, on learning of their refusal, shipped it to Salt Lake City, sold it there, and brought suit against Van Valkenburgh & Son for the difference between the contract price and the amount realized. He recovered judgment, from which Van Valkenburgh & Son prosecute error.

The car occasioning the controversy was loaded at Ohiowa and consigned by Gregg to himself at Beaver City. The bill of lading was then sent by Gregg's agent to Gregg at Lincoln, where Gregg made a draft on Van Valkenburgh & Son, and, attaching the bill of lading thereto, sent it to Minden, where Van Valkenburgh & Son conducted their business. The right of recovery in this case depends upon whether Gregg tendered delivery of the car at the place where he had contracted to deliver it. Van Valkenburgh & Son claim that the contract was for delivery to them at Ohiowa or Tobias. Gregg claims that the price was merely fixed at those points, but that he was justified in consign-

ing the corn to himself at the point designated by the vendees. In such a case there is no doubt that had Gregg consigned the car at Ohiowa to the vendees at Beaver City, this would have been a delivery at Ohiowa. On the other hand, consigned as it was, the delivery or tender of delivery was at Beaver City, and could not take place until the vendees, by payment of the draft at Minden, obtained possession of the bill of lading. (*Merchants Nat. Bank v. Bangs,* 102 Mass., 295; *Forcheimer v. Stewart,* 65 Ia., 593.) Gregg did not tender a delivery in accordance with the contract, if the contract required a delivery at Ohiowa. This we think it did. Where no place of delivery is provided, it may be inferred from the circumstances of the case, from the usages of trade or the previous course of dealing between the parties, or even from the nature of the article sold. (*Hatch v. Standard Oil Co.,* 100 U. S., 134.) But where the contract designates a place of delivery, the contract prevails; and patent ambiguities in a written contract must be solved according to the ordinary rules in such cases. If it were not for the last clause in the written contract there could be no possible doubt that the delivery was to be at Ohiowa or Tobias. It reads: "Bought * * * [on] track Ohiowa or Tobias." It is evident, however, from the last clause that the contract contemplated the shipping of the cars to some other point, and it is claimed that such other point was the point of delivery, and that the first clause only indicated that the vendee was to pay the freight from Ohiowa or Tobias to such point. But to give it such a construction does violence to the language of the contract. We think its obvious meaning is that the corn was to be bought, i. e., delivered, on the tracks at Ohiowa or Tobias billed to Van Valkenburgh & Son at such point as they should designate. Their direction was "on Monday next load another large car to us at Beaver City." Gregg did not ship to them at Beaver City, but shipped to himself at Beaver City. A vendor cannot

46

recover damages for the refusal of the vendee to accept unless delivery is tendered at the place required.

It is contended that the circumstances and the conduct of the parties indicate a different construction, because the other two cars were shipped in the same manner and accepted by the vendees; but although the vendees did accept the other cars, they wrote twice to the vendor complaining of the manner in which they had been shipped, on the ground that by such method the car arrived several days before the vendees could obtain possession of it through the bill of lading, and that the carrier subjected them to demurrage in consequence. The acceptance of these cars so billed waived only a departure from the contract as to these cars, and did not alter the terms of the contract for the corn not yet shipped.

It is also claimed that it was necessary for Gregg to ship in that manner in order to secure payment. The answer to this contention is that had he desired to protect himself in such manner he should have so stipulated in the contract. It is probable that, under the terms of the contract, the vendee should have been present at Ohiowa to pay for the cars, and that if Gregg had tendered the corn at Ohiowa and refused to ship until payment was made there, this would have been a sufficient compliance; but having contracted to deliver at Ohiowa, he had no right under the terms of his contract to attempt to deliver elsewhere, whatever his motive may have been.

It is argued that the vendees refused to accept solely because the price of corn had fallen at Beaver City. This is all immaterial to the case. If the vendor did not tender compliance with the contract, the motive of the vendee in refusing to accept otherwise than as provided in the contract does not affect the case.

The evidence does not sustain the verdict, and the judgment must be reversed. As the cause must be remanded for a new trial, it may be well to direct attention of coun-

sel to the fact that the construction of this contract is for the court, although there may arise questions of fact for the determination of the jury which would influence the construction. On the former trial the court gave no instruction as to the construction of the contract. In further proceedings this point should be observed.

REVERSED AND REMANDED.