OLIVER P. CARTER ET AL., APPELLEES, V. HENRY ROBERTS, APPELLANT.

FILED DECEMBER 14, 1909. No. 15,801.

1. **Sales: PLACE OF DELIVERY: DAMAGES.** Plaintiffs sent to defendant a bid for grain by the car-load on track at defendant's place of business, fixing the price they were willing to pay and a time within which the grain was to be furnished. Defendant responded by telegraph, accepting the bid and agreeing to furnish a stated number of bushels of the kind and quality of grain named in the bid. Plaintiffs replied by letter, confirming the purchase "your track, subject to our card conditions," etc. Defendant failed to furnish all the grain promised. In an action on the contract for damages for nonperformance, it is *held* that defendant's place of business where the grain was to be placed in cars on the track was the place of delivery, and that the market price of the grain at the place of delivery was to be considered in estimating the damages, if any were sustained by the purchaser.

2. ——: **CONTRACT: CONSTRUCTION.** In such case, where the bid contained the provision that, if the grain was not shipped within the specified time, the contract would be held open until the shipment was made or it was closed by the bidder, the bidder would have a reasonable time, after the expiration of the period named, in which to close it.

3. ——: ——: **ACTION FOR BREACH: INSTRUCTIONS.** Under the facts set out in the opinion, it is *held* that the court properly instructed the jury that plaintiffs were under no obligation to purchase grain in the markets of the place to which the grain was to be consigned for the purpose of supplying the quantity of grain which defendant had undertaken to furnish.

APPEAL from the district court for Burt county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*F. Dolezal* and *J. A. Singhaus*, for appellant.

*F. S. Berry* and *Hopewell & Hopewell*, contra.

REESE, C. J.

This action was instituted by plaintiffs and against defendant in the district court for Burt county. It appears from the record that plaintiffs were dealers in grain, with their principal place of business in the city of Minneapolis, Minnesota. Their method of transacting business was by sending what are termed "card bids" to the dealers in grain throughout the country, by which they offered to purchase grain by the car-load at the station of the seller, at the price fixed in the bid, less freight charges, the rate of such charges being furnished in a separate statement, and changed or modified when changes or modifications were made for transportation by the carriers or transportation companies. After the freight rates were furnished to the dealers they continued in force until changed by the carriers. The card bids were in the following form; the price offered being placed opposite the kind and quality of grain referred to:

"CARTER, SAMMIS & CO.
GRAIN DEALERS.
907 Chamber of Commerce,
Minneapolis, Minn.

"Acceptance to reach us by wire 9:30 o'clock A. M. tomorrow or next business day. We bid you for grain on board cars your station, 'less freight as per our letter,' and billed as we may direct. 'Apparent errors excepted.' We give state weight and grades on all purchases. Acceptance reaching us later than time specified will be accepted if no material change in the market, otherwise we will send prompt counter bid by wire. 3 white oats, —; 4 white oats, —; 3 yel. corn, —; 3 mixed corn, —; 2 rye, —; 1 nor. wheat, —; 2 nor. wheat, —; 2 Durum wheat, —; 1 flax, —. Ship, —. Mail us samples of BARLEY for special bids.

"Shipments at your station at your convenience before 20 days. 700 bu. a car wheat, flax, corn and rye. 1,200

34

bu. car oats. We charge terminal weighing and inspection, and freight on dockage on wheat, flax and rye. Acceptance for over 10 cars subject to our confirmation. If grain is not shipped within specified time, we consider contract open until shipped or advised you that we have closed same. Grain grading other than purchased will be applied on purchase, market difference, day of arrival. 48 lbs. to a bushel of barley. Consignments will receive careful attention."

Printed on the right hand margin of the card is the following:

"Are you figuring daily what these bids net your track."

In answer to the receipt of the card bids, defendant telegraphed plaintiffs, on various occasions, agreeing to furnish the quantity of grain given in the telegram, and plaintiffs replied confirming the purchase. It is alleged in the petition, in three counts thereof, that at the dates alleged the plaintiffs purchased of defendant, in the manner stated, the number of bushels set out in each count, but that defendant failed to furnish the quantity purchased, although partial shipments were made, and that plaintiffs had been damaged by such failure in the amounts named in the petition. The pleadings are quite voluminous and need not be here set out. The answer consists of averments of considerable length, by which the allegations of the petition, except as to the agreements to sell, are traversed, and defendant's theory of the case stated. It is alleged in the petition that the grain was purchased to be delivered in cars at the station from which it was to be shipped, while it is claimed in the answer that the delivery was to be made at Minneapolis, or such other point as might be designated by plaintiffs as the place of delivery. There was no verbal or oral agreement between the parties. All the written evidence consists of letters and telegrams which passed between them. The correspondence cannot be here set out without extending this opinion to an unreasonable length, and no effort will be made to do so. When a card bid was re-

ceived by defendant he would send plaintiffs a telegram, of which the one of July 9, 1906, may serve as an illustration. It was as follows: "Tekamah, Neb., July 9. To Carter, Sammis & Co. Accept your bid on twenty thousand three white oats. Henry Roberts." To this plaintiffs responded by letter as follows: "Minneapolis, Minn., July 9, 1906. Henry Roberts, Tekamah, Neb. We herewith confirm purchase of you today by wire of 20,000 bu. 3 white oats @ 27⅜ your track subject to our card conditions Sep. or Oct. shipment. Please ship same to CARTER, SAMMIS & CO., and draw on us at MINNEAPOLIS, MINN., with bill lading attached to draft. Shipping instructions later on. CARTER, SAMMIS & CO. De Veau."

There were three agreements of the kind above set forth, all being substantially alike, except as to the kind and quantity of grain to be shipped, and upon these three agreements arise the three causes of action stated in the petition. An important question arises upon these contracts as to the place of delivery. It is contended by defendant that the place of delivery was at Minneapolis, or such other point as plaintiffs might direct, and that the market at Tekamah, or other points from which the grain was to be shipped, could not furnish the true measure of damages, if any were sustained, by the nonfulfilment of the contract by defendant; that had the grain been damaged, lost or destroyed in transit, or on the track at Tekamah, the loss would have fallen on defendant; and that the title could not pass to plaintiffs until the grain was delivered to and received by them at Minneapolis. The trial court instructed the jury, in substance, that the place of delivery was on board the cars on track at the place of shipment, and that the market price at such place would furnish the basis for their calculations, and that if defendant had failed to comply with the contract in the delivery of grain, and the jury found for plaintiffs, the measure of damages would be the difference between the contract price and the value

at the time the grain should have been delivered, if the value exceeded the purchase price. As we view the question presented, we are persuaded that it is settled by our decisions in *Van Valkenburgh & Son v. Gregg*, 45 Neb. 654, and *McKee v. Bainter*, 52 Neb. 604. Those cases were in some respects similar to this one, and the question of law involved was the same as here, and it was held that the place of delivery was, as specified in the contract, "on track" at the point of shipment. The card bid in this case was: "We bid you for grain on board cars your station, 'less freight as per our letter,' and billed as we may direct." The answer to this was by wire accepting the bid and specifying the number of bushels sold. The letter from plaintiffs to defendant, dated the same day as the telegram of acceptance, confirmed the purchase "your track" subject to card conditions, etc. The district court did not err in its construction of the contract.

The evidence shows that by agreement of the parties the contracts were extended to various dates after the expiration of the 20 days, and that they were finally closed by plaintiffs after defendant had refused to furnish the remainder of the grain due plaintiffs. The tendency of the market was upward, and the question as to whether plaintiffs had closed the contract within a reasonable time after the expiration of the time agreed upon was submitted to the jury by proper instructions. We find no error in this part of the case.

There was some correspondence between the parties that when defendant failed to get and deliver the grain, as per contract, plaintiffs might purchase on the market at Minneapolis sufficient in quantity to complete the delivery, and in some instances the purchases were made. In others the grain could not be had at a reasonable price in that market. On October 27, 1906, defendant wrote plaintiffs the following letter: "Tekamah, Neb., Oct. 27, 1906. Carter, Sammis & Co., Minneapolis, Minn. Gentlemen: We are going to telegraph you in a day or two asking you what price you can buy in the other

20,000 bu. of oats at. When we do we want you to answer us by wire within half an hour after you receive our message. The way you have been doing in not answering except by letter the day following, when we ask you for any information, has cost us already 5 to $600, and we want you to give our questions immediate attention. We have only three more days to close out that 20,000 bu. oats, and if you don't want to answer because of the expense of the. telegram we will pay the expense of your telegram. Yours truly, Henry Roberts." Whether the promised telegram was sent or not, we do not know, as we fail to find it in the record before us, but we do not deem this material, as plaintiffs wrote defendant October 29, two days later, as follows: "Minneapolis, Minn., Oct. 29, 1906. Mr. Henry Roberts, Tekamah, Neb. Dear Sir: Received your favor of Oct. 27, and we wrote you a short line yesterday stating that you could have thirty days more time in which to deliver the 20,000 bushels of oats, if necessary. Now the chances are that we have got to have the oats on this sale, as we have been filling up some sales in Omaha with other oats that we intended these oats for. When you get ready to ship these oats, why let us know, and we will give you shipping instructions on the same. Now in regard to your telegrams about your oats. Will state that it isn't the easiest thing on earth to be able to buy some oats that will fill our sales, as, for instance, we have sales made against the oats we bought of you in Omaha, and we were only lucky to be able to buy a few here the other day to fill up the 10,000. We can't figure on this market here in Minneapolis as a basis to buy in your oats on. Awaiting your favors, we remain, Yours truly, Carter, Sammis & Co. De Veau."

This was followed by a letter from defendant to plaintiffs, dated October 29, accepting the extension of time offered, and the contract was continued in force. On this part of the case the court instructed the jury that there was no evidence submitted which would warrant them in finding that plaintiffs were in any way bound to

buy in the oats for defendant on the Minneapolis market. We have examined the bill of exceptions with all the care and diligence at our command, and can find nothing, either admitted or offered, which tends to show any obligation on the part of plaintiffs to make such purchases. True, they expressed a willingness to do so if desired, upon the payment of their usual commission therefor, but there was no binding contract to do so.

In defendant's answer he presented three counterclaims. The first was founded upon the alleged failure of plaintiffs to make the purchases referred to on the Minneapolis market. On this the court properly instructed the jury that nothing could be allowed defendant. As to the second and third, the instructions were that they were admitted and the amounts due defendant thereon agreed to, which amounts were stated in the instructions.

Finding no reversible error in the proceedings in the district court, the judgment is

AFFIRMED.