## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## B. A. BLENNER v. VIM MOTOR TRUCK COMPANY.

### June 14, 1923.

1. SALES—*Tender and Payment of Purchase Price—Tender in Advance of Delivery—Case at Bar.*—In the instant case it was the position of the defendant company, a manufacturer of automobiles, that under a contract of sale with plaintiff, a dealer in automobiles, defendant had the right to require payment or tender of the purchase price for the trucks, the subject of the sale, in advance of the placing of the trucks in the hands of a carrier for shipment to the plaintiff at Richmond, Virginia, and of delivery of the bill of lading therefor to the plaintiff by the defendant company.

   *Held:* That as the contract between plaintiff and defendant contained mutual and concurrent promises, this position of defendant was untenable.

2. CONTRACTS—*"Tender"—Mutual and Concurrent Promises.*—Where the contract does not call for the payment of money as an ordinary debt, or the performance required is not independent of any precedent or concurrent act of the other party, but the case is one of mutual and concurrent promises, the word "tender" does not mean the same kind of offer as when used with reference to the payment or offer to pay an ordinary debt due in money, in cases where the money is offered to a creditor entitled to receive it and nothing further remains to be done, the transaction thereby being completed and ended; but it then means a readiness and willingness, accompanied by an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such purpose.

3. CONTRACTS—*Tender—Mutual and Concurrent Promises—Readiness and Ability of One Party to Perform.*—Readiness and ability of one party to a contract to do the acts which the agreement requires him to perform, and notice of such readiness to the other party are sufficient evidence of, and indeed constitute and imply, an offer or tender in the sense in which those terms are used in reference to agreements generally. It is not an absolute and unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of the readiness of the other party to perform his part of the agreement.

4. SALES—*Place of Delivery—How Determined.*—The question as to the place of delivery and as to whether it is for the buyer to take possession or for the seller to send the goods to the buyer may be expressly determined by the contract between the parties, or the agreement as to this may be implied.

5. SALES—*Place of Delivery—How Determined.*—When no place of delivery is specified in the contract, the general rule is that the goods are to be delivered at the place where they are known to be at the time of the contract, which is usually the seller's place of business, or, in case of goods to be manufactured, the place of manufacture. But if the seller has no place of business then his residence may be the proper place, or some place other than either may be deemed or inferred to have been contemplated, by reason of the circumstances, such as the nature of the article, usage or previous course of dealing between the parties.

6. SALES—*Place of Delivery—Course of Dealing—Change by Mutual Assent.*— Although the place of delivery may have been fixed by the course of dealing of the parties, yet of course it may be changed by mutual assent.

7. SALES—*Terms of Payment—Election by Seller—Case at Bar.*—In the instant case, an action by an automobile dealer against a manufacturer of automobiles for the breach of a contract of sale of trucks, the general sales contract provided that the balance of the purchase price of automobiles bought under the contract should be paid by plaintiff *either* upon his receiving "sight draft attached to the transportation company's bill of lading, *or* by cash before shipment of the cars, as the party of the first part" (the defendant company) "may elect."

   *Held:*   That the right of election applied to the purchase price of all of the cars sold under such contract, and not to the individual shipments, so that there was the right of but one election thereby given the defendant company, which election when once made, governed the terms of payment for all the cars sold under the contract.

8. SALES—*Terms of Payment—Tender—Case at Bar.*—In the instant case, the contract of sale between an automobile manufacturer and a dealer provided that payments of the factory price of the trucks in question should be upon the delivery to the purchaser of a bill of lading showing shipment of the trucks to him.

   *Held:*   That the seller having refused to deliver such bill of lading, he had no right to demand payment of the purchase price in advance of putting the trucks in the hands of the carrier and of delivery of the bill of lading.

9. SALES—*Terms of Payment—Tender—Reservation of Title—Case at Bar.*— Where a contract of sale provided that payment of the purchase price should be made upon the delivery to the purchaser of a bill of

lading showing shipment of the subject matter of the sale to him, the fact that the contract contained a provision that title should not pass until final cash payment was made, did not give the seller the right to demand the payment of the purchase price before the delivery of the bill of lading to the purchaser.

10. Sales—*Title, Delivery and Payment not Dependent Upon Each Other.*— It is elementary that, in sales of personalty, the passing of title, the delivery of possession, and the terms of payment, are not dependent upon each other. They are all matters which may be regulated by contract, independently of each other.

11. Sales—*Damages—Loss of Profit.*—In an action by buyer against seller for breach of contract of sale, damages for loss of profits are not prospective and conjectural and may be allowed.

12. Appeal and Error—*Reversal—Final Judgment by Supreme Court of Appeals.*—In the instant case upon reversal the Supreme Court of Appeals being of the opinion that the facts before it were such as to enable it to thereby attain the ends of justice, under section 6363 of the Code of 1919, rendered final judgment for the plaintiff in error.

Error to a judgment of the Circuit Court of the city of Richmond, in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Reversed and final judgment for plaintiff.*

This is an action of trespass on the case in assumpsit and an ancillary attachment proceeding, instituted by the plaintiff in error, a retail automobile and motor truck dealer (who will be hereinafter called plaintiff), against the defendant in error, a foreign corporation engaged in the manufacture and sale of motor trucks and other automobiles (which will be hereinafter called the defendant company), seeking to recover $1,390.00 damages for the alleged breach on the part of the defendant company of its contract of sale to the plaintiff of ten Vim motor trucks at the factory sale price of $556.00 each (such damages being the alleged loss of profits of the plaintiff of $139.00, the difference between said $556.00, factory sale price, and $695.00, the alleged

market value at Richmond, Va. [the alleged contract place of delivery], at the alleged contract time of delivery, of each of said ten trucks, aggregating $1,390), and for a certain deposit of $100.00, and for $60 loss on spare parts purchased by the plaintiff for said trucks, the last two items aggregating $160.00.

There was a trial by jury which resulted in a verdict for the plaintiff for the said $160.00 only. The plaintiff moved the court to set aside such verdict and grant him a new trial, on the grounds that the verdict was "contrary to the law and the evidence and misdirection of the jury by the court." This motion the court overruled and entered judgment in accordance with the verdict, and the plaintiff brings error.

The material facts, shown by the evidence, without conflict, are as follows:

The particular contract of sale involved in this controversy was made under a general sales agency contract in writing between the plaintiff and the defendant company, which was entered into on December 4, 1915, for a period of one year, expiring on December 4, 1916, but which was, in effect, extended by mutual consent of the parties, as evidenced by the correspondence between them in evidence, so as to cover the contract of sale in suit.

The factory of the defendant company was located at Philadelphia, and it manufactured a number of different styles or models of trucks and automobiles; the retail prices at which they were to be sold by retail dealers throughout the country were fixed by the defendant company by listing the same on specification sheets issued by it. These different models were all embraced under the general classification of "commercial cars."

The general sales agency contract, aforesaid, provided that the plaintiff had the exclusive right to sell the

"cars" of the defendant company within a certain territory specified therein, during the life of the contract, at the retail list prices aforesaid, and it was stipulated that the plaintiff would "maintain and at all times secure the full list prices" of the defendant company "for said cars." It was further stipulated in such agreement that the plaintiff "purchases for the purposes of this agreement" from the defendant company "and to be sold by" the plaintiff, a specified number of "commercial cars, to be ready for delivery" on certain specified dates, with provision, however, that such dates "were approximate only."

The place of delivery is not specified in such contract.

Such contract contains the following provisions with respect to the prices to be paid by the plaintiff to the defendant company and the terms of payment for the cars.

"8. The party of the second part" (the plaintiff) "has paid to the party of the first part" (the defendant company) "upon the execution and delivery of the agreement the sum of   *   *   ($100.00)   *   *   blanket deposit on account of the purchase price of said cars, which represents the sum of         paid on account of the purchase price of each of said cars. The price of said cars to the party of the second part" (the plaintiff) "shall be the prices at which the same are listed in the specification sheet of the party of the first part now issued and a copy of which the party of the second part" (the plaintiff) "hereby acknowledged to have received, less   *   *   twenty per cent. discount from said list prices.   *   *   *"

"9. Payment of the balance of the purchase price of said cars shall be made *either* by sight draft attached to the transportation company's bill of lading, *or* by cash before shipments of the cars, *as the party of the first part*" (the defendant company) "*may elect.*" (Italics supplied.)

"10. The party of the second part" (the plaintiff) "agrees to pay said balance of the purchase price of said cars promptly when notified that the same are ready for shipment or delivery."

The price of the ten trucks in question, as listed on the specification sheet mentioned in said general sales contract, was $695.00 each, which, as aforesaid, was the retail selling price of the trucks.

A number of "cars" were delivered to the plaintiff by the defendant company under said general sales contract prior to the transaction in suit embracing the ten Vim motor trucks, in all of which cases, without exception, the place of delivery was Richmond, Va., and the terms of payment were the said list retail selling price, less twenty per cent., plus freight charges, which was paid cash by the plaintiff on arrival of the cars at Richmond and on delivery to plaintiff of the bills of lading therefor.

The course of dealing with respect to all cars delivered to the plaintiff prior to the transaction in suit, involving the ten motor trucks, was, without exception, that the plaintiff would send to the defendant company a formal order for a certain "car" or "cars" upon a printed form furnished by the defendant company, with the blanks therein filled in, of the date of the order, by whom ordered, place of delivery, to whom to be shipped, route, when to be shipped, purchaser's signature and by whom sold—or would order a certain car or cars informally by letter.

The defendant company on receipt of such orders would write the plaintiff whether it could or could not deliver the car or cars ordered within the time requested and, if it decided that it could, it would accept the orders; subsequently it would ship the cars to the plaintiff at Richmond, Virginia, and draw on him, through bank,

with bill of lading for the cars attached to the draft, the draft being drawn payable on arrival of the cars at Richmond—the presentation of the draft with the bill of lading attached serving as notice to the plaintiff, under the aforesaid paragraph 10 of the sales agency contract, that the cars were ready for delivery so soon as they should arrive in Richmond, Virginia.

The only complaint we find in the record made by the defendant company of the plaintiff with respect to such payments is that of the plaintiff's failure, in some instances, to pay the drafts promptly on arrival of the cars at Richmond—no claim at any time prior to the transaction in suit is made that he should have remitted the price before the shipment of the cars or the delivery of the bill of lading.

With respect to the ten Vim motor trucks transaction in suit, they were ordered by the plaintiff by letters and the order was accepted by letters of the defendant company of date December 11, 22 and 30, 1916, and the defendant company thereby agreed to make delivery of such trucks on certain days in January and February, 1917, the latest date being February 27, 1917.   None of the trucks were ever delivered.

On February 7, 1917, and again on February 22, 1917, the plaintiff wrote the defendant company urging delivery.

On February 26, 1917, the defendant company wrote the plaintiff the following letter:

"February 26, 1917.
"B. A. Blenner,
    "Richmond, Va.
"Dear Sir:
    "In reply to your favor of the 22nd, would advise that we have no orders on hand from your company,

and would not be able to accept any orders from you, due to the fact that we are represented in your city at the present time by the Kaehler Motor Company.

"It would be our suggestion that if you have any sales for Vim trucks in Richmond that you communicate with the Kaehler Motor Company, and in all probability you can make some arrangements that will prove attractive.

"In any event, you have our wish for your success.

"Very truly yours,

"Vim Motor Truck Co.,

"S. H. Hale, Asst. Sales Mgr."

Thereupon on March 2, 1917, the plaintiff wrote the defendant company calling its attention to its acceptance of the aforesaid orders for the trucks in question, stating that he wanted them, or payment of the profits on the sale of them which he would otherwise lose, etc., and urging that they be delivered by March 15, 1917. Receiving no reply to this letter, the plaintiff placed the matter in the hands of his counsel. The latter promptly wrote the defendant company, calling its attention to its acceptance of said orders and demanding shipment of the cars according to contract, stating, however, that "the dates of delivery will now have to be changed," or that the defendant company pay the plaintiff "a profit of $139.00 on each car," which he would otherwise lose. To that letter the defendant company replied by the following letter to the plaintiff:

"March 23, 1917.

"Mr. B. A. Blenner,

"2047 W. Broad Street,

"Richmond, Va.

"Dear Sir:

"Your attorneys, Messrs. Cutchins & Cutchins, have written to us asking that we furnish you with the ten

model F. trucks which you ordered. We have prepared for shipment to you, these ten trucks, and they are now ready at our factory. It is a condition of your agreement, to-wit:

" 'It is understood and made a part of this agreement that title of ownership of car or cars as described herewith, does not pass to undersigned until final cash payment is made.'

"In view of this provision we demand from you the payment in cash of the purchase price of these cars prior to shipment. The cars at the time your con-. tracts were made retailed at $695.00 each, making a total of $6,950.00, and allowing you the discount of twenty per cent., which you had previously been allowed, makes the net amount now payable by you $5,560.00. We will therefore ask you to send us your certified check or a New York draft before April 2, 1917, or we shall then conclude you do not wish the trucks, and that your contract is at an end.

> "Yours very truly,
> "Vim Motor Truck Co.,
> "S. H. Hale, Asst. Sales Mgr."

The condition referred to and quoted in this letter is not embraced in the general agency contract aforesaid. It appears only in the form of formal orders aforesaid, which does not appear from the evidence to have been used by the plaintiff in giving the orders for the ten Vim motor trucks in question; those orders having been given and accepted by letters, as aforesaid.

On receipt of the last quoted letter, the plaintiff wrote the defendant company the following letter:

"March 29, 1917.
"Vim Motor Truck Co.,
    "Philadelphia, Pa.
"Gentlemen:

"Replying to your favor of the 23rd instant, in regards to the ten Vim trucks that you are going to ship me on April 2d.

"I wish to state that I have made arrangements with my bank, the American National Bank of this city, to pay your draft for $5,560.00 as soon as the trucks arrive.  If you do not hear from the bank direct, kindly wire them if they will honor draft, for your own satisfaction.

"Send them with bill of lading attached to draft through the American National Bank of this city, just as you have shipped all of the other trucks in the past.
                          "Yours very truly,
                                "(Signed)  B. A. Blenner."

The defendant company replied as follows:

                                      "March 31, 1917.
"B. A. Blenner,
    "2047 West Broad Street,
        "Richmond, Virginia.
"Dear Sir:

"In reply to your letter of March 29th, would state that your suggestion does not comply with our letter of March 23rd.

"We renew request for payment of the price before shipment, but the money must reach us on April 2.
                          "Very truly yours,
                              "Vim Motor Truck Co.,
                              "S. H. Hale, Asst. Sales Mgr."

Following this letter the plaintiff, through the Franklin National Bank of Philadelphia, offered, on April 2, 1917, to pay to the defendant company, in Philadelphia, the contract price of said ten Vim motor trucks, to-wit, $5,560.00, if the latter would deliver the cars to the railroad company in Philadelphia for shipment to plaintiff in Richmond and would deliver to such bank a bill of lading therefor; and the evidence shows, without conflict, that such bank was there and then ready and willing to make such payment upon such conditions being complied with on the part of the defendant company, and so informed the defendant company, but the bank was told by the defendant company that the officer who knew of the transaction was not in and that he would call the bank over 'phone the next day. The next day the officer of the defendant company mentioned called up the said Philadelphia bank over the 'phone and stated to the bank that the defendant declined to comply with the aforesaid conditions of delivery of the cars to the railroad company for shipment and of delivery of a bill of lading therefor to such bank as agent for the plaintiff.

Following that, the action and attachment proceeding in judgment were promptly instituted.

The evidence for the plaintiff showed that at the contract time for the delivery of the ten Vim motor trucks in suit the plaintiff had actually sold several of them at the aforesaid list price of $695 each; that the market in Richmond, Virginia, at such time for the residue of such trucks was such that the plaintiff could readily have sold the residue of them at such price if they had been delivered there at the contract time of delivery; and that the plaintiff had, before such time, practically done all of the work and gone to practically all of the

expense which he would have had to do or go in order to complete such sales and realize his aforesaid profit of $139 upon each car, aggregating the sum of $1,390.

The court gave the following instruction at the request of the defendant company:

"1.  The court instructs the jury that the defendant had the right to require payment by cash in advance of the shipment of the trucks in question, and if they believe from the evidence that it did require payment by certified check, New York draft, or in cash, before shipment of said trucks, and so notified the plaintiff, and the plaintiff failed to comply with the said requirements by payment of said sum as required, or the tender thereof, or offer to pay same at the office of the defendant before the trucks should be shipped, they shall find for the defendant as to the claim for $1,390.00 damages for the non-delivery of said trucks."

The court refused certain instructions asked for by the plaintiff, among which are the following, and which are here copied in so far as material:

"C.  The court instructs the jury as a matter of law, that the sale and purchase of an article imports a mutual and concurrent obligation on both the buyer to pay the purchase price and the seller to deliver the goods, and that neither is obliged to do the first act or to perform his part of the agreement without or before the other, and if, therefore, the jury believe from the evidence that the said Blenner, on the 2nd day of April, 1917, was ready, willing and able to pay the sum of $5,560.00, the purchase price, for ten Vim trucks, and that he had forwarded or caused to be forwarded the said sum of money to Philadelphia, and that through his agent, the Franklin National Bank, of -Philadelphia, he offered the said sum of money to the

said defendant corporation, and stood ready and willing to pay the said sum upon the simultaneous delivery of a bill of lading for the said trucks, and if they further believe that the failure of the said Blenner to pay the said sum was due to the unreadiness or unwillingness of the said defendant corporation to perform its agreement to deliver the said trucks, then they must find for the plaintiff.

"D.  The court instructs the jury that if they believe from the evidence that   *   *   *   on the said 4th day of December, 1915, an agreement in writing was entered into   *   *   *   setting forth the rights and duties of the parties thereunder, and that after the 4th day of December, 1916, the said   *   *   written agreement was continued by them by mutual consent upon the same terms and that during the continuance of the relationship previously existing between them plaintiff gave a *bona fide* order for ten Vim trucks, which the defendant accepted and promised to deliver, and that subsequently without default on the part of the plaintiff the said defendant repudiated its contract with the said plaintiff without fault on the part of the plaintiff, they must find for the plaintiff.

"E.  The court instructs the jury that in the eyes of the law the printed agreement dated the 4th of December, 1915, is not a binding contract for the sale of thirty automobiles, but its legal effect is to create an automobile selling agency, and that legal contracts for the purchase and sale of trucks as described therein grow out of the said agreement when the plaintiff specifies and orders a certain truck or trucks and the defendant accepts the same.  The jury is further instructed that the interpretation of any clause of such agreement may be properly inferred from the usual course or customs of dealing between the parties there-

under and that when a given number of a certain model truck are ordered by the plaintiff and the order is accepted by the defendant, it is presumed to be upon the same terms as to shipment and as to payment as the parties by their usual action have sanctioned; and that neither party has the right to substitute other and different terms after an order has been given and accepted in good faith. If, therefore, the jury believe from the evidence that the plaintiff ordered ten Vim trucks and the defendant accepted such order and promised to deliver the said trucks at a specified time, and that the plaintiff was ready, willing and offered to pay the price contracted to be paid, in the manner at all times previously adopted and sanctioned by them in their previous dealings, and that the defendant failed to deliver the said trucks according to the usual custom of their business, then they must find for the plaintiff.''

*John A. Cutchins,* for the plaintiff in error.

*S. A. Anderson,* for the defendant in error.

SIMS, J., after making the foregoing statement delivered the following opinion of the court:

The decision of the case turns upon the decision of the following question presented by the assignments of error, namely:

[1] 1. Is the position of the defendant company, that under the contract of sale in suit, as shown by the evidence without conflict therein, it had the right to require payment or tender of the purchase price for the trucks in advance of the placing of the trucks in the hands of the carrier for shipment to the plaintiff at Richmond, Virginia, and of delivery of bill of lading

therefor to the plaintiff by the defendant company, untenable as a matter of law?   And did the trial court err in giving instruction No. 1, stating the affirmative, and in refusing instructions "C," "D" and "E," stating the negative of that proposition?

The question must be answered in the affirmative.

In 3 Elliott on Contracts, sections 1968 and 5042, the following is said:

[2, 3] "Sec. 1968.—*Conditional tender—Mutual and Concurrent acts or promises.*   *   *   Where the contract does not call for the payment of money as an ordinary debt, or the performance required is not independent of any precedent or concurrent act of the other party, but the case is one of mutual and concurrent promises, the word 'tender' does not mean the same kind of offer as when used with reference to the payment or offer to pay any ordinary debt due in money, in cases where the money is offered to a creditor entitled to receive it and nothing further remains to be done, the transaction thereby being completed and ended; but it then means a readiness and willingness, accompanied by an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such purpose.   Such readiness, ability and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender in the sense in which those terms are used in reference to agreements generally.   It is not an absolute and unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of the readiness of the other party to perform his part of the agreement."   Citing *Smith* v. *Lewis*, 26 Conn. 110; *Taylor* v. *Mathews*, 53 Fla. 776, 44 So. 146;

*Cook* v. *Doggett,* 2 Allen (Mass.) 439; *Irvin* v. *Gregory,* 13 Gray (Mass.) 215; *Browning* v. *Owen County,* 44 Ind. 11; *Lynch* v. *Jennings,* 43 Ind. 276. See also to the same effect *Clark* v. *Weis,* 87 Ill. 438, 29 Am. Rep. 60; *Bussard* v. *Hilder,* 42 Or. at p. 504, 71 Pac. 642; *Baldwin* v. *Bank,* 17 Col. App., at p. 13, 67 Pac. 179; *Summers* v. *Hedenberg,* 198 Ill. App. 460; 2 Benjamin on Sales, sec. 897, notes 8 and 23, and cases there cited; *Merton* v. *Lamb,* 7 T. R. 125; *Rawson* v. *Johnson,* 1 East 203; *Waterhouse* v. *Skinner,* 2 Bos. & P. 447; *Ferry* v. *Williams,* 8 Taunt. 62; *Norwood* v. *Read,* 1 Plowd. 180; *Manistee Lumber Co.* v. *Union Bank,* 143 Ill. 490, 32 N. E. 449; *Comstock* v. *Lager,* 78 Mo. App. 390; *Mount* v. *Lyon,* 49 N. Y. 552.

[4, 5] "Sec. 5042. *Place of delivery.*—The question as to the place of delivery and as to whether it is for the buyer to take possession or for the seller to send the goods to the buyer may be expressly determined by the contract between the parties, or the agreement as to this may be implied." (Citing *Devins* v. *Edwards,* 101 Ill. 138; *Van Valkenburgh* v. *Gregg,* 45 Neb. 654, 63 N. W. 949; *Field* v. *Runk,* 22 N. J. L. 525; *McLaughlin* v. *Marston,* 78 Wis. 670, 47 N. W. 1058.) "When no place of delivery is specified in the contract, the general rule is that the goods are to be delivered at the place where they are known to be at the time of the contract, which is usually the seller's place of business, or, in case of goods to be manufactured, the place of manufacture. But if the seller has no place of business then his residence may be the proper place, or some place other than either may be deemed or inferred to have been contemplated, by reason of the circumstances, such as the nature of the article, usage or previous course of dealing between the parties. * *"

The following authorities are relied on in the brief and

in oral argument for the defendant company, namely: Burks Pl. & Pr. p. 371, *et seq.*, Chap. xxvii, Tender; *Norfolk, etc., R. Co.* v. *Mills*, 91 Va. 613, 22 S. E. 556; *Keffer* v. *Grayson*, 76 Va. 517, 44 Am. Rep. 171; *Poague* v. *Greenlee*, 22 Gratt. (63 Va.) 724; *Shank* v. *Groff*, 45 W. Va. 543, 32 S. E. 248; Benj. on Sales, p. 920, and note; 77 Am. Dec., note, pp. 468-479; *Beauchamp* v. *Archer*, 58 Cal. 431, 41 Am. Rep. 266; *Allen* v. *Hartfield*, 76 Ill. 358; *Packer* v. *Button*, 35 Vt. 188; 3 Elliott on Contracts, secs. 1959, 5042; and 35 Cyc. 172. We deem it sufficient to say that we have carefully examined all of these authorities; that we find that they do not deal with the rights of parties where the contract contains mutual and concurrent promises, but with such rights where the contract calls for the payment of money as an ordinary debt, and where nothing further remains to be done; or where the performance required is independent of any precedent or concurrent act of the other party; or where the plaintiff made no offer to perform the contract on his part, in the only cases dealt with in which the contract contained mutual and concurrent promises. And we have found nothing in such authorities contrary to what we have said above.

[6] No place of delivery was specified in the contract of sale in the case in judgment. Hence, in accordance with the authorities on the subject the contract place of delivery was fixed, as an original proposition, by the prior course of dealing between the parties. By that course of dealing, as shown by the evidence without conflict, Richmond, Virginia, was the contract place of delivery. By the concluding correspondence between the parties, however, Philadelphia was, by mutual assent of the parties, fixed upon as the place of delivery.

[7, 8] As to the terms of payment upon which the delivery should have been made, the general sales con-

tract provided that the balance of the purchase price other than the $100 deposit made upon the execution of that contract, should be paid by the plaintiff *either* upon his receiving "sight draft attached to the transportation company's bill of lading, *or* by cash before shipment of the cars, as the party of the first part" (the defendant company) "may elect." The right of election thereby given, by its terms, applied to the purchase price of all of the cars sold under such contract, and not to the individual shipments, so that there was the right of but one election thereby given the defendant company, which election, when once made, governed the terms of payments for all the cars sold under the contract. The evidence shows, without conflict, that by the unbroken course of dealing between the parties under the contract prior to the giving and acceptance of the orders for the motor truck transaction in suit, the defendant company elected that the terms of payment by the plaintiff of the balance aforesaid (which by the course of dealing was modified to mean the whole factory price of the cars), should be required to be cash upon the receipt by the plaintiff of bill of lading therefor, showing shipment to him at Richmond, Virginia, and upon the arrival of the cars at that place. The place of delivery having been changed by mutual assent of the parties, as aforesaid, the contract of sale shown by the evidence, as aforesaid, provided that payments of the factory price of the motor trucks in question by the plaintiff upon the delivery to him, or the bank as his agent, at Philadelphia of bill of lading showing shipments of the trucks to him at Richmond. Hence, the defendant company having refused to deliver such bill of lading, although the plaintiff offered and was ready and able to make such payment contemporaneously with the delivery to him

of such bill of lading, it is plain that the defendant company, under the unbroken current of authority on the subject, had no right to demand payment of the purchase price of the trucks in advance of the putting of the trucks in the hands of the carrier for shipment and of the delivery of the bill of lading, and by its refusal to so ship the trucks and deliver the bill of lading the defendant company breached the contract and rendered itself liable in damages to the plaintiff.

[9, 10] It is urged in argument for the defendant company that the condition mentioned in the letter of that company of March 23, 1917, namely: "It is understood and made a part of this agreement that title of ownership of car or cars, as described herewith, does not pass to the undersigned" (the plaintiff) "until final cash payment is made"—gave the right to the defendant company to demand the payment of the purchase price in advance of putting the trucks in the hands of the carrier for shipment, and of the delivery of the bill of lading to the plaintiff. In the first place, it appears from the evidence that while that condition is embraced in some of the orders given by the plaintiff for cars prior to the orders for the trucks in question, it was not embraced in those orders or referred to in the letters of the defendant company accepting those orders; nor was it embraced in the general agency contract. However, if it had been embraced in those orders or in that contract, or were regarded as embraced in the contract of sale of the trucks by inference from the course of dealing between the parties, it would be immaterial. It is elementary that, in sales of personalty, the passing of title, the delivery of possession, and the terms of payment, are not dependent upon each other. They are all matters which may be regulated by contract, independently of each other. As

we have seen, in the instant case, the contract of sale, in regulating the terms of payment and the delivery of possession, contained the mutual and concurrent promises aforesaid, in accordance with which the defendant company did not have the right to demand the payment of the purchase price in advance of the putting of the trucks in the hands of the carrier for shipment and of the delivery of the bill of lading to the plaintiff.

[11] It is further urged in the brief for the defendant company that the damages claimed by the plaintiff for loss of profits is "prospective and conjectural and cannot be allowed." No authority is cited to sustain this position. Upon the uncontroverted facts in the instant case, the reverse of this contention is so well settled, and especially by the decisions of this court, that we deem it sufficient to say that there is no merit in this position.

[12] The verdict and judgment under review must, therefore, be set aside and reversed; and being of opinion that the facts before us are such as to enable us to thereby attain the ends of justice, we shall, under the statute (section 6363 of the Code), render final judgment for the plaintiff for the sum of $1,550 damages, with interest thereon from March 1, 1917, until paid, and costs.

*Reversed and final judgment for plaintiff.*