UNIVERSAL SAV. CORP. v. MORRIS PLAN CO. OF NEW YORK et al.

(District Court, S. D. New York.  January 28, 1916.)

1. TRADE-MARKS AND TRADE-NAMES ☞67—UNFAIR TRADE—PLAN FOR CON-
   DUCTING—BANKING BUSINESS—INFRINGEMENT.

   A plan of industrial banking, put into effect by defendants, *held*, on the
   evidence, not an appropriation of one devised by complainant's assignor,
   but to be essentially different, and not an infringement of complainant's
   rights, conceding that property rights may exist in a mere idea or
   scheme for conducting business, without physical means or devices for
   carrying it out.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
   Dig. § 78; Dec. Dig. ☞67.]

2. ATTORNEY AND CLIENT ☞129(1)—BREACH OF CONFIDENCE BY ATTORNEY—
   REMEDY.

   The remedy of a client for the disclosure by his attorney of informa-
   tion imparted to him in confidence, to the client's injury, is by an action
   at law for damages.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 284–
   287; Dec. Dig. ☞129(1).]

In Equity.  Suit by the Universal Savings Corporation against the
Morris Plan Company of New York and others.  Decree for de-
fendants.

S. M. Brandt, of Norfolk, Va., and Olcott, Gruber, Bonynge & Mc-
Manus, of New York City, for complainant.

Satterlee, Canfield & Stone, of New York City (R. Randolph Hicks,
of Norfolk, Va., and Harlan F. Stone and Huger W. Jervey, both of
New York City, of counsel), for defendants.

HAZEL, District Judge.  [1] This is a bill in equity for an ac-
counting and for an injunction to prevent the defendant corporation,
the Morris Plan Company of New York, and the individual defend-
ants, from appropriating or using the plan of industrial banking,
referred to as the Morris plan of industrial banking, of which the
complainant, the Universal Savings Corporation, claims to be the
owner.  It is averred in the bill that in 1898 this idea or conception
of a plan of industrial banking originated with David Stein, whose
object or purpose was to establish a system of banking peculiarly
adapted for use by workingmen, mechanics, or persons without finan-
cial means or credit, who, having no security, are ordinarily unable to
obtain loans without the payment of exorbitant interest.  It was be-
lieved that money might safely be loaned to a person on receipt of
his promissory note, in which two other persons similarly situated
financially had joined, by requiring the amount advanced to be repaid
in 50 weekly installments, and by requiring the borrower to buy the
investment stock of the banking association to the value of the amount
borrowed, thus creating a fund which at the end of the installment
period would equal the amount borrowed.  Under said plan the bor-
rower, on maturity of the note, was to have the option of using the
installment accumulation either for paying the debt or for a share of

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the paid-up stock bearing interest at 5 per cent., which was usable as collateral for other loans or could be hypothecated by the lender to discharge the original debt. The bill also alleges that the stock of the proposed banking association was to be divided into A, B, and C classes. In complainant's brief it is stated that class A is the installment stock, divided into shares of $50 each, payable in weekly installments of $1; B, the capital stock, of the par value of $100; and C, the investment stock, also payable on the installment plan of $1 per week, said stock being $50 per share.

The defenses are: (1) That the complainant's system is not the system under which defendants operate; (2) that there was no property right in complainant's plan or system; (3) abandonment and dedication to the public; (4) that the conception or idea, if it constituted a property right, was vested in Stein's trustee in bankruptcy; (5) laches; and (6) res adjudicata.

In support of the allegations of the bill there was testimony showing that in the year 1901, at Newport News, Va., David Stein, complainant's assignor, assisted in the organization of the Merchants' & Mechanics' Savings Association, which adopted his alleged invention or plan of banking; that he was a director of the association for a short time; and that the witness Batchelor, an attorney, prepared the charter, by-laws, form of notes, and application blanks used by said association. Subsequently, in 1904, Stein interested the defendant, Arthur J. Morris, a practicing attorney, in a proposal to organize at Norfolk, Va., a banking association similar to that of the Merchants' & Mechanics' Savings Association, and submitted to Morris a letter (Plaintiff's Exhibit 1) accompanied by a table, purporting to explain in detail his method of operation, and requesting Morris to call a meeting of persons with a view to perfecting the organization of such a company. He testified that it was agreed between him and Morris that, if the meeting eventuated in an association, he should be manager, and Morris counsel, thereof, and that he enjoined Morris from using said plan, table, or system without his consent; but there was substantial contradiction of such testimony by Morris.

However, the proofs show that in October, 1904, a meeting was held in the Monticello Hotel at Norfolk, attended by various persons, to whom Stein was introduced by Morris as the originator of the plan of banking under which the Merchants' & Mechanics' Savings Association of Newport News was being operated. At this meeting reference was made to Plaintiff's Exhibit 1 to demonstrate the possible accumulations on an investment of a certain amount of money in accordance with the Stein plan, subject to losses and expenses of operation; but no definite action was taken, although it appears that a prospectus and subscription agreement, dated March 5, 1905 (Plaintiff's Exhibit 2), was later prepared by Morris, and signed by him and one Upton and a third person. Little was done to obtain further subscriptions, and the proposed banking organization did not materialize.

To show continued connection by Morris with the Stein plan to the year 1907, Stein gave testimony that efforts were made to apply the

said plan to the Portsmouth Investment Company, a corporation about to be liquidated, and a new prospectus and subscription agreement (Plaintiff's Exhibit 3) were prepared; but such testimony is not fully credited. Morris, though admitting that he prepared the prospectus (Plaintiff's Exhibit 2), based upon the by-laws of the Merchants' & Mechanics' Savings Association, denies having prepared Plaintiff's Exhibit 3, and claims that it was not written in his office. His stenographer corroborates such testimony. Stein swore also that his relations with Morris continued practically down to the incorporation of the Fidelity Savings & Trust Company; that he frequently discussed his plan with Morris and counseled with him in relation thereto; and that he believed the latter was continuing his efforts towards promoting the desired organization. Morris, however, contradicted such testimony, claiming that his connection with the matter positively ceased in 1905, and that he advised Stein to counsel with the witness Upton, who perhaps could help him. On this point there was much dispute, but the burden rested upon complainant to prove by a fair preponderance of the evidence that such relations continued, and that Stein had reason to believe that Morris would continue to promote the original undertaking. In this it has failed. There is evidence that Stein subsequently conferred with Upton, to whom Morris delivered the prospectus prepared by him; but little was done to organize a company, and the work of promotion was apparently abandoned.

About five years later, in April, 1910, the Fidelity Savings & Trust Company was organized by Morris under chapter 49a of the Code of Virginia. Such company concededly embodies the Morris plan of industrial banking, notwithstanding its organization under the statute law of the state of Virginia, and I think was essentially different from Stein's plan of banking, or the plan under which the Merchants' & Mechanics' Savings Association was carrying on its business. It is true the form of notes, application blanks, Constitution, and by-laws were perhaps modeled on those of the Merchants' & Mechanics' Savings Association, and that there were other similarities; but such similar features, as hereinafter stated, were old expedients.

It appears that since its organization the Fidelity Savings & Trust Company has been successfully operated, and that numerous banks have been organized throughout the country, with large capital stocks, to engage in such plan of banking, all meeting with extraordinary success. Demands for banks of this kind have become so extensive as to necessitate the formation of the Fidelity Corporation of America and the Industrial Finance Corporation of New York as organizing agencies to supply such demand. It is pointed out that the popularity of such institutions is indicated by the fact that the Industrial Finance Corporation of New York began business in June, 1914, with a subscribed capital stock of $1,500,000 and an authorized capital of $7,000,000, and was instrumental in the organization of the Morris Plan Company of New York, defendant herein.

The principal question is whether the respective plans of banking under discussion are substantially similar. I think they are fundamentally different. There are, of course, similar elements embodied

in each plan; but the feature of a fixed capital subscribed by independent investors, present in the Morris plan, but not in the Stein plan, is of vital importance, and makes the former plan appeal more readily to investors than the Stein plan, wherein the organizers subscribe for capital stock payable in installments; the fund so obtained being loaned out, and the borrower at the time of borrowing receiving investment stock convertible into capital stock. Under the Morris plan, on the contrary, the borrower purchased certificates of investment, or obligations of the company, which were not convertible into capital stock. The witness Williams, a banking expert, clearly differentiated the two plans, showing that one is operated upon a mutual basis, the members or borrowers subscribing to the capital stock and participating in the profits and losses, and the other upon a fixed capital, the stockholders being the managers and proprietors of the banking institution, and the borrowers and savers not participating in the profits and losses.

Complainant, however, contends that the letter and table delivered by Stein to Morris disclose a fixed capital stock in the Stein plan. True enough, the letter indicates a capital stock realized by the sale of class A stock, and states that the profits will inure to the benefit of B stock, and that "we will also sell more B stock, * * * from which these people will not get any profits before the annual meeting." The wording of the letter conveys the idea that the plan was mutual in its character, the members and borrowers contributing the capital stock, which was not a fixed capital stock, but one that fluctuated. That this is a proper interpretation is shown by article 2, sections 5 and 6, of the by-laws of the Merchants' & Mechanics' Savings Association, which substantially provide that holders of A stock can convert the same into B stock. The table shows a calculation of profits to be derived from loaning $20,000 in accordance with the Stein plan; the theory being that payments and interest would be immediately reloaned on similar terms. In my judgment there is no property right in such table, as it is merely a mathematical computation.

The feature of accepting as security for a loan to one of the makers a note made by him and two joint makers, as a guaranty of good character, without requiring as security either real estate or personal property, was not a new expedient; such being a known form of security in co-operative banking institutions abroad. In the pamphlet of Henry W. Wolff in evidence, published 1898, it appears that in so-called village banks or friendly societies, limiting the borrowing powers of members, notes of hand signed by two sureties were deemed sufficient security, and it is stated therein that payment of loans by weekly installments was a method generally adopted by loan societies and similar bodies, although perhaps not the best method for village banks. Members of such savings societies are required to take up a share in the society, for which they may pay in one sum or in weekly installments. There is also testimony to the effect that Stein remarked to various witnesses at the time of the organization of the Merchants' & Mechanics' Savings Association that he had become acquainted with the plan under which it was being organized in Russia. However this

may be, it is difficult to conceive that a property right exists in an idea or scheme for conducting business without physical means or devices for carrying it out. Bristol v. E. L. A. Society, 52 Hun, 161, 5 N. Y. Supp. 131; Burnell v. Chown (C. C.) 69 Fed. 993; Bristol v. E. L. A. Society, 132 N. Y. 264, 30 N. E. 506, 28 Am. St. Rep. 568.

[2] Complainant contends that Stein's plan was imparted to Morris as his attorney in confidence, and with a restriction against using the same without his consent; but, according to the evidence of the defendants, neither the Merchants' & Mechanics' Savings Association, Batchelor, Upton, nor the witness Koteen were committed to secrecy —the plan being imparted to them without restrictions against publicity. Under these circumstances I am disinclined to credit Stein's version that he took the precaution to protect his plan by agreement with Morris. It is true that an attorney should be held to the highest good faith in dealing with a client; but it is not at all certain in my mind that an agreement by a lawyer to associate in the promotion of a system of industrial banking creates the relation of attorney and client, or precludes him from afterwards engaging in the same business or from using an original idea or conception in combination with the plan imparted to him by his former associate. In any event, if the relationship of attorney and client actually existed between Stein and Morris, and if the former, in disregard of the confidence reposed in him, disclosed information imparted to him by the latter to his injury, the remedy is at law to recover for the damages sustained. Weeks on Attorneys (2d Ed.) § 10. Whether Morris should have been prompted by a devotion to the interests of his erstwhile client or associate to inform him that he had discovered an additional element which, when combined with the features of the Stein plan, would overcome objections thereto, and render it more inviting to investors, is a question I am not called upon to answer.

Inasmuch as I have reached the conclusion that the defendants are not appropriating the plan of Stein, or the result of labor or research on his part, but have merely adapted known features in connection with features originated by Morris to a system of industrial banking, it is unnecessary to pass upon the defenses of laches, res adjudicata, and the trustee's title to the Stein plan.

The bill is without equity, and is dismissed, with costs.