52 161<br>132a 264

---

JOHN I. D. BRISTOL, Appellant, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent.

*Suggestion of a new system of soliciting life insurance — when it does not possess any property rights protected by law.*

An action was brought to obtain an accounting from the defendant and a recovery of a suitable sum of money to compensate the plaintiff for indicating to the defendant, through its president, a new system of soliciting life insurance which, after a confidential disclosure thereof to the president of the defendant, the complaint alleged had been adopted by the defendant. The details of the new scheme or system of transacting the business of soliciting life insurance was contained in a letter, annexed to the complaint as an exhibit, which was addressed to the president of the defendant. After stating at some length the success of the plaintiff's new system in other States and with other companies, the letter stated, in substance, that underlying the whole system was a common-sense plan

of advertising by calling the attention of large insurers to the company and the policies issued by it, and inducing business men to insure largely even when naturally opposed to life insurance; that many agents had tried to work the plaintiff's method from reading letters or circulars, but that very few of such attempts were successful; and also added, that if "the Equitable would adopt this system, and the writer with it," he thought a marked increase of business would inevitably follow.

It did not appear that the plaintiff had copyrighted the above idea and confined it to a definite and certain combination of words or phrases which might be printed and publicly declared to be his own system of business, nor that he had patented or registered the mode of introducing the matter of life insurance to the public.

Upon an appeal from a judgment sustaining a demurrer to the plaintiff's complaint:

*Held*, that the ideas disclosed by the complaint, and the letter attached thereto as an exhibit, did not possess any property rights which were susceptible of protection under our system of law.

APPEAL from a judgment dismissing the complaint herein, entered in the office of the clerk of the city and county of New York on April 9, 1888, upon an order made at the New York Special Term sustaining a demurrer interposed to the complaint, on the ground that the same did not state facts sufficient to constitute a cause of action.

*Raphael J. Moses, Jr.*, for the appellant.

*C. B. Alexander* and *E. L. Richards* for the respondent.

MACOMBER, J.:

The complaint is filed to obtain an accounting from the defendant and a recovery of a suitable sum of money to compensate the plaintiff for communicating to the defendant, through its president, a new system of soliciting life insurance, which, after a confidential disclosure thereof to the president of the defendant, was alleged in the complaint to have been adopted by the defendant. The details of the new scheme or system of transacting the business of soliciting life insurance is said, by the complaint, to be contained in Exhibit A, which is annexed thereto, and, consequently, for a thorough examination of the case, that document requires close inspection.

This exhibit consists of a letter (dictated) bearing date February 4, 1885, addressed to the president of the defendant. After stating, at some length, the success of the plaintiff's new system in other States and with other companies, it says:

" Underlying the whole system of work is a common-sense plan of advertising (without which nothing really succeeds in this country), calling the attention of large insurants to the company and the policies issued by it, and inducing business men to insure largely, even when naturally opposed to life insurance. Of course, this system takes some money, but this can be partially taken from the ordinary advertising expenses — newspaper advertising and tons of printed matter, much of which is really useless. Capital and intelligence is the basis of every large application. The commercial agency reports, etc., are the guides to these men. A letter worded just right and not too long, mailed from the right place, from a party having just the right title, and written on a letter-head arranged in just the proper way, is the greatest advertisement a company can possibly have, if carefully followed up. They do not attract the attention of rival agents, interest just the proper party, and a thousand dollars expended in this way will secure many times the amount of business that any other method of advertising possibly can, especially as it is only the preliminary work for an agent's call."

\* \* \* " Propositions follow under this method : An agent calls, is received by a gentleman like a gentleman, and a very large application is frequently written on the first interview. The insurant becomes a friend of the company and of the agent. The ratio of losses on such business is small, and untaken policies a rarity, from the reason that the applicant has not been 'bored' into taking what he does not want, but has been carefully worked so as to desire what he has received ; a dignity is thus given to the business that no other method gives, and men of dignity and character can follow it with pleasure and satisfaction. Many agents have tried to work my methods from seeing letters or circulars, but very few such attempts have been successful. From a thousand letters for dates of birth, for instance, they have received less than three or four per cent of replies, and many of these have been 'jokes,' but when I have carefully instructed the agents how to use a series of letter blanks for responses, etc., a very different result immediately manifests itself. I inclose, as proof of this, a couple of letters from the Cleveland general agent of this company. A stronger commendation of my methods of work could not be well given ; you will notice from the spelling of these letters that the agent is not highly educated, which

is still stronger proof that agents can successfully work these plans after being taught." * * * " When the applicant is not secured on the first interview or attempt, and had been given up for the time, another opportunity comes with every year on 'change of age.' This takes another complete system of work, and the results have been in every way favorable ; a very large proportion of the business at my general agency being now secured in this way. Sometimes a circular to fit peculiarities of the business is necessary. I have written a great many, and inclose one of which over a million and a half have been printed. They have been extensively used by many of your general agents. If the Equitable would adopt this system, and the writer with it, I think a marked increase of business would inevitably follow. It would be necessary that I should be some sort of an officer of your company on a salaried position, with, perhaps, a percentage on the work secured under my schemes. Perhaps that $75,000 per year you mention could be realized. Would not care to take a general agency, as I have a very nice business under way now. You can think this all over, and when you see me return the inclosed letter and tell me what your insurance intuitions indicate. I am to call for the photo of Dr. Bristol, you know, and that will give you an opportunity to do this. In the meantime I need hardly to say that this letter must be considered of the most confidential nature.

"Very respectfully yours.

"JOHN I. D. BRISTOL."

It does not appear that the plaintiff has copyrighted the above idea and confined it to a definite and certain combination of words and phrases which might be printed and publicly declared to be his own system of business, nor does it appear that he has patented or registered the mode of introducing the matter of life insurance to the public. He stands, therefore, solely upon the proposition that he is the possessor of an idea which, when combined with skill in any soliciting agent, with or without a disposition on the part of the persons solicited to be insured, is of great value to the party to whom it may be divulged.

The learned counsel for the plaintiff takes this view of the case, for he says in his brief " We possess as absolute a right over our

thoughts as we have over the brain cells whose rhythm gives to the sensational impulses the thought form, and whether we use the thought form to mold words with our mouth or bricks with our hands, the product is equally our property." If this proposition were perfectly sound, there would be no occasion for the existence of either copyright or patent-right law, which is designed to secure, not the ideas but the products of ideas of inventive genius, and that, too, for only a limited period.

It is difficult to conceive how a claim to a mere idea or scheme, unconnected with particular physical devices for carrying out that idea, can be made the subject-matter of property. So long as the originator of the naked idea, whether, germinating under the laws of metaphysics, it be regarded as Platonic or Cartesian in its make-up, keeps it to himself, it is his exclusive property, but it ceases to be his own when he permits it to pass from him. As the ingenious counsel for the defendant say, it is like commercial paper, it passes by delivery. Ideas of this sort in their relation to property may be likened to the interest which a person may obtain in bees and birds, and fish in running streams, which are conspicuous instances of *feræ naturæ.* If the claimant keeps them on his own premises, they become his qualified property, and absolutely his so long as they do not escape. But if he permits them to go he cannot follow them. It is not necessary to cite authorities under this head because the principle is elementary.

It is evident, however, that it was not to the defendant alone that the plaintiff made a disclosure of his ideas, for he says: "Many agents have tried to work my methods from seeing letters or circulars, but very few such attempts have been successful." It seems, therefore, that it is not the use of the plan adopted, but the successful use of it, upon which the plaintiff relies for a cause of action. If the defendant, in adopting this system, had taken its author with it, as the plaintiff proposed, then his scheme of exploiting life insurance would have assumed a tangible form, and, in the absence of an agreement fixing the value thereof, he would be entitled to such compensation as his services were actually worth; but that indispensable part of the scheme or system was not adopted by the defendant, and hence no cause of action has accrued to the plaintiff.

On the whole, we do not think that the ideas disclosed by the

complaint and the exhibit thereto possess any property rights which are susceptible of protection under our system of law. And yet, though it is clear that we have no statute or common law which prohibits the plaintiff from "inducing business men to insure largely, even when opposed to life insurance," if considerations of public policy are to be regarded, the plaintiff, while violating no law, would render himself open to the criticism of the Augustan poet—*Invitum qui servat, idem facit occidenti.*

The judgment should be affirmed, with costs.

Van Brunt, P. J., concurred.

Judgment affirmed, with costs.