BURNELL v. CHOWN et al.

(Circuit Court, N. D. Ohio, W. D.    October 22, 1895.)

No. 1,266.

1. COPYRIGHT—STEPS TO OBTAIN—PLEADING.
An averment that a printed title of a book was furnished to the librarian of congress by complainant, and that "thereafter, within the time and in the manner prescribed by law, your orator did all the things required by law to be done in order to secure to himself the full enjoyment of all rights and privileges" granted by the copyright laws, is insufficient to show title. It must be directly averred that, within 10 days after publication, two copies of the book were deposited in the office of the librarian of congress.

2. SAME—INFRINGEMENT—COMPILATION SHOWING FINANCIAL STANDING.
Complainant conceived and put in operation a scheme for collecting, classifying, and putting in convenient form information in respect to the financial standing of business men in towns or counties, with a key thereto, the same being intended for the use of business men in the same locality or district. Defendants, by means of the same method of collecting, classifying, etc., obtained, by their own original efforts, like information in respect to the standing of parties in a different county. *Held*, that this was not an infringement of complainant's right of copyright, under the statute, or of his common-law right of property in his own compilation, in case the mere private and limited circulation thereof should be considered as not amounting to a publication. Perris v. Hexamer, 99 U. S. 674, applied.

This was a bill in equity by A. S. Burnell against C. M. Chown, E. G. Chown, and the Chown Commercial Company, to enjoin an alleged infringement of a copyright.

The bill avers that the plaintiff is a citizen and resident of the state of Iowa, that he conceived the plan of gathering and imparting the information referred to in the opinion, and used the same by circulating bound copies of said information to subscribers in various localities. He charges that the defendant, after having fully acquainted himself with the plaintiff's conception and plan of adapting the same to the uses of business men, went to the city of Lima, in the county of Allen, in the Northern district of Ohio, and there, without license or authority from the plaintiff, and with the purpose and intent of infringing upon his rights, began the work of collecting information and imparting the same to business men in that county.

The key which plaintiff used in his work is as follows:

N—Prompt pay, and financially good.
P—Prompt pay, regardless of means.
W—Slow pay, but financially good.
G—Slow pay, and limited means.
H—Require cash on delivery.

The defendants' key, it is averred, is composed as follows:

A—Prompt pay, and good for large amounts.
B—Prompt pay, and good for moderate amounts.
C—Prompt pay, and good for small amounts.
L—Slow pay, but good for large amounts.
M—Slow pay, but good for moderate amounts.
X—Require cash on delivery.

James M. Brown, Walter F. Brown, and D. C. Henderson, for plain-tiff.

M. A. Hoagland, for defendants.

RICKS, District Judge. This is a bill, filed by the plaintiff, ask-ing for an injunction to. prevent the defendants from appropriating, or in any manner using, "the conception, idea, book, and record of obtaining, collecting, classifying, putting into convenient form, and making record thereof, for the uses of business men, the experiences of business men with men in dealing with them on credit, and. of leasing, selling or delivering such experiences and records to any person whatever," which ideas, conceptions, etc., are fully set out in the bill. The bill avers, in substance, that the plaintiff conceived the idea of gathering, from personal investigation and labor, the standing of citizens, with respect to their credit, in certain localities, sometimes embracing cities, 'sometimes counties, and sometimes a wider territory. The standing and credit of these citizens were ex-pressed by letters and numbers, in a manner which served as a key, and from which business men within the same territory, dealing with such citizens, might at a glance ascertain their credit, their financial standing, their promptness in the payment of their debts, and such other information of that character, useful to merchants, manufac-turers, and dealers. This information, so arranged, was put in the form of bound volumes, either typewritten or printed, and sold to subscribers only. The matter was intended for the special and pri-vate information of the persons who purchased this compilation. The averment of the bill is that one of the defendants served for a num-ber of years in the office of the plaintiff, there learned of this con-ception, idea, plan, and arrangement for collecting and imparting this information, and afterwards associated with him the other de-fendants, who made a similar publication for use in Ohio and else-where. The bill avers, in one part, that a printed title of this book was furnished the librarian of congress, under the copyright law, and subsequently avers that "thereafter, within the time and in the man-ner prescribed by law, your orator did all the things required by law to be done in order to secure to himself the full enjoyment of all rights and privileges granted by the laws of the land governing copy-rights." A demurrer was filed to this bill. One of the grounds for demurrer is that the bill does not aver what was done by the plain-tiff in order to entitle him to the benefit and protection of the copy-right laws of the United States, and reference is more particularly made to the paragraph just quoted as being a conclusion of law, and wholly insufficient to show that the plaintiff has complied with the statutory requirements in order to entitle him to protection under

the copyright laws. In view of the closing part of the brief for the plaintiff, I do not know that it is necessary to pass upon this question; but, being left still uncertain as to whether the plaintiff relies upon his common-law rights or statutory rights for protection, I proceed to consider this ground of demurrer. The copyright act provides explicitly just what authors and publishers shall do in order to entitle them to protection under that act. One of these requirements is that, within 10 days after publication, two copies of the book shall be deposited in the office of the librarian of congress. I think this is a fact which must be averred in order to show affirmatively that the plaintiff has complied with the statute.

Plaintiff's solicitor, in the closing paragraph of his brief, says:

"But all the foregoing authorities are in cases for infringement of copyright under the statute. Our case is one where the scheme, plan, and conception of the author, which is being appropriated by the defendants, has never been published, and although he has taken steps to protect himself if he should publish the same, yet, never having published the same, all his common-law rights are preserved in full force."

It may therefore be proper to consider this controversy with reference to plaintiff's rights at common law.

The American Trotting Register Association, in 1894, filed a bill in this court to restrain W. H. Gocher and A. W. Parrish from publishing a list of trotters and pacers having made a record of 2:30 or better. The bill proceeded upon the charge that the complainant had compiled such a list of horses, published in what is known as "Wallace's Year Books," which compilation was the result of original information and facts gathered from original sources by complainant's industry, and at its expense. In the answer, the defendants claimed that all the facts stated in complainant's books were obtainable from other independent sources, and exhibited to the court a large number of publications which contained lists of trotters and pacers having the records stated by complainant. Affidavits were filed on both sides, which proved that, while the defendants might have been able to compile all of their information from original sources, yet it was apparent, from the evidence, that they did not do so, but availed themselves of the industry of the complainant, and did use tables which it compiled at great expense and labor. In that case, this court held:

"A mere compilation of facts is protected by the copyright law, as well as original matter showing invention. There are numerous cases which hold that any compilation, or any tables or statistics, which are the result of the author's industry, and which are gathered at his expense, cannot be bodily used by an infringer. Although the same facts could be gathered by the infringer, he must do so at his own expense, and as the result of his own industry. It would be wrong to permit him to extract bodily from a copyrighted book tables, facts, and statistics, and hand them over to the printer in the form the copyrighter has prepared them, merely because it was more convenient for the printer. If he were permitted to do this, he would avail himself directly of the industry and expense to which the person who copyrighted the work was subjected." 70 Fed. 237.

In this case, the plaintiff has gone to original sources of information, and by great industry and by some originality has compiled this information, and has conceived a plan by which it could be imparted

in a very clear and speedy way for the information of those who purchased the right to use it. But it will hardly be contended that, because John Smith gathered information as to the credit, business methods, standard for prompt payment of debts, etc., of all the citizens of the city of Toledo, and arranged a plan by which this information might be imparted, by the use of a key, to the merchants of the city of Toledo, that therefore James Jones could not, by his own industry, research, and labor, gather similar information as to men in Cuyahoga county, and impart that information by some similar plan or key to the merchants of Cuyahoga county. The latter cannot be said to have copied the production of the former. Conceding that he followed the same general plan of John Smith, he nevertheless gathered his information as the result of his own industry and research, and at his own expense. The only thing that he has patterned after is the general plan of imparting this information to those who purchased the production of his labor. Would he, by doing this, violate the law?

In the case of Perris v. Hexamer, 99 U. S. 674, the supreme court held:

"The right of an author or a publisher, under the copyright law, is infringed only when other persons produce a substantial copy of the whole, or of a material part, of the book or other thing for which he secured a copyright. Where, therefore, the owners of a copyright for maps of certain wards of 'the city of New York, surveyed under the direction of insurance companies of said city, which exhibit each lot and building, and the classes as shown by the different coloring and characters set forth in the reference,' brought his bill to restrain the publication of similar maps of the city of Philadelphia, held, that the bill could not be sustained."

Chief Justice Waite, in delivering the opinion of the court, after stating the facts, said, with reference to the map of the city of New York:

"The maps were made after a careful survey and examination of the lots and buildings in the enumerated wards of the city, and were so marked with arbitrary coloring and signs, explained by a reference or key, that an insurer could see at a glance what were the general characteristics of the different buildings within the territory delineated, and many other details of construction and occupancy necessary for his information when taking risks. They are useful contrivances for the dispatch of business, but of no value whatever except in connection with the identical property they purport to describe."

"The defendant made the necessary examination and survey, and published a similar series of maps of Philadelphia. At first, he used substantially the same system of coloring and signs, and consequently substantially the same key, that had been adopted by the complainants, but afterwards he changed his signs somewhat, and, of course, changed his key. The question we are to consider is whether the publication of the defendant infringes the copyright of the complainants, and we think it does not. A copyright gives the author or publisher the exclusive right of multiplying copies of what he has written or printed. * * * It needs no argument to show that the defendant's maps are not copies, either in whole or in part, of those of the complainants. They are arranged substantially on the same plan, but those of the defendant represent Philadelphia, while those of the complainant represent New York. They are not only not copies of each other, but they do not convey the same information."

Now, while this is a case under the copyright law, the principle is the same under the common law, and it seems to me it is applicable

to the case under consideration. The defendant, in this suit, has adopted the same plan for gathering his information, and the same plan for imparting his information. But the information does not concern the same persons, is not to be used by the same persons, and is concerning a people living in a territory entirely different from that covered by the plaintiff's publication. The most that can be claimed on behalf of the plaintiff is that the defendant has appropriated his scheme, device, conception, and idea for gathering and imparting this particular information. Many books copyrighted share the same fate, without infringement. An author conceives a plot for a novel. He locates his characters, surrounds them with scenery, climate, productions, and customs peculiar to that locality. He weaves the thread of his novel, and has his characters born, married, and die, according to his plot. His book is copyrighted and accepted by the public as one of thrilling interest, and thousands and tens of thousands of copies are sold. Another author selects his characters, locates them in a different climate or country, with different surroundings, has substantially the same plot as to their birth, life, and death, and the book meets with equally popular reception. One is in no respect a copy of the other; yet the second writer unquestionably adopted the design, the scheme, the plot, and many of the ideas of the former. The framework and the outlines are the same, the book is the product of as much industry, knowledge, and literary ability as the former, but is not, within legal terms, an infringement.

But it is contended that this information, so gathered and compiled by the plaintiff, has never been published; that it is his own private property, and he has a right to protect himself against this publication. Conceding that, according to the averments of the bill, there has been no publication of the plaintiff's work, within the meaning of the law, the work has nevertheless been put in the form of a book or manuscript for convenient reference and use, and has been circulated among those who have purchased copies of it. Whether this is a legal publication or not is immaterial. As before stated, in my judgment, they have not made a copy of it which would be an infringement under the copyright law, or an invasion of the plaintiff's rights under the common law. Even if this is unpublished, and still private manuscript, the defendants have not copied it, any more than the map of Philadelphia was a copy of the map of New York, in the case cited in 99 U. S. In that case, the defendant's map had a key, had arbitrary signals and signs by which the information was imparted to those who bought the map, just as in this case the defendants use a key similar in plan to the plaintiff's, and his general plan for imparting the information they have gathered. In the latter case there is no more a copy than there was in the case of the map.

The defendants are not appropriating to any extent, or in any respect, the result of the labor, research, and industry of the plaintiff, by which the information for his publications or manuscript has been gathered. They have simply availed themselves of the plan by which this information was ascertained and imparted, and have shown just as much industry, have gone to sources of original information, and have at great expense compiled their information, and

used it. Admitting that they have gathered this information and seek to impart it upon the same plan which the plaintiff has conceived and originated, that conception is not a matter which can be protected by either the copyright law or the common law. For these reasons, I think the demurrer must be sustained, and the bill dismissed.