Syllabus.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### STEIN AND OTHERS V. MORRIS AND OTHERS.

January 11, 1917.

Absent, Prentis, J.*

1. TRADE SECRETS—*Unfair Competition.*—Where one plan of banking is operated upon a mutual basis, the members or borrowers subscribing to the capital stock and participating in the profits and losses; while the other is operated upon a fixed capital, the stockholders being the managers and proprietors of the banking institution, and the borrowers and savers not participating in the profits and losses, the two plans are not substantially similar.

2. PROPERTY—*Ideas.*—Where one originated an idea or scheme of banking, he could not have a property right in such a method or idea for conducting business without any physical means or devices for carrying it out. In other words, he could not put such an idea into operation without it at once escaping his own grasp and becoming the property of mankind.

3. PRIVILEGED COMMUNICATIONS—*Attorney and Client.*—No communication to a lawyer for the express purpose of having it brought to the attention of the public, or communicated to another, is privileged.

4. PRIVILEGED COMMUNICATIONS—*Attorney and Client.*—Plaintiff had united with others in organizing a banking association through which he made known to the public his so-called scheme and method of doing business. Several years afterwards he approached defendant, an attorney, with the request that he would unite with him in organizing a similar association in another city. Defendant did unite with plantiff in an effort to organize such a company, but the effort resulted in failure. The scheme was not committed to defendant in confidence; on the contrary, the very thing he was asked to do necessarily involved his discussing plaintiff's plan and making it known to the public. It was held that there was no violation by the defendant of professional confidence when the defendant eventually established a scheme somewhat similar.

---

* Submitted before Judge Prentis took his seat.

Appeal from the Circuit Court of the city of Norfolk. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*S. M. Brandt,* for the appellants.

*Hicks, Morris, Garnett & Tunstall,* and *Harland F. Stone* (N. Y.), for the appellees.

HARRISON, P., delivered the opinion of the court.

This bill in equity was filed by the appellant, David Stein, asking for an accounting and praying for an injunction to restrain the appellees, Arthur J. Morris, the Fidelity Corporation of America, and the Industrial Finance Corporation, from appropriating or using the plan of banking known in this record as the "Morris Plan of Industrial Banking," of which the complainant claims to be the owner.

It appears from the record that in March, 1910, A. J. Morris, one of the appellees, together with several associates, organized in the city of Norfolk the Fidelity Savings and Trust Company, Inc., which began in May, 1910, to conduct the business of a loan and savings company for the accommodation of people of small means who could not get accommodation from the ordinary commercial banks. This corporation prospered to such an extent that by the end of the first year the financial soundness of the principle on which it operated was demonstrated, and other similar institutions were established in different parts of the country. In the summer of 1912 it was found that an extensive development of this system of banking would require a larger capital, and the Fidelity Corporation of America was thereupon organized with an authorized capital of $300,000. To this company Morris and his associates con-

veyed all of their rights in the business theretofore con-
ducted by them of organizing such institutions. These in-
dustrial banks grew so rapidly that in July, 1914, Morris
and his associates organized in the city of New York the
Industrial Finance Corporation with a capital stock of
$1,500,000, to which the Fidelity Corporation of America
transferred all of its assets of every character, together
with the good will of the business which it had theretofore
conducted of organizing banks on the plan which had then
become known as the "Morris Plan of Industrial Banks."
The record shows that at the time of the institution of this
suit these industrial banks had been established in many lo-
calities throughout the United States.

In addition to the capital invested in the Industrial
Finance Corporation, approximately $7,000,000 has been
invested in the capital of the numerous operating banks
that have been established by that corporation. It is this
business that the appellant, five years after the movement
began, seeks to restrain and call to account, upon the
ground that he is the originator of the instalment plan of
industrial savings and loan banking, and that the use of his
idea by the appellees is wrongful and prejudicial to his
rights.

It appears that in April, 1901, appellant and a number of
associates organized in Newport News, Virginia, a cor-
poration known as the "Merchants and Mechanics Savings
Association," for the purpose of prosecuting the business
of savings and loans in the city of Newport News. The
claim alleged is that this institution and a certain table and
letter filed with the bill constitutes an unique plan of lend-
ing to poor people money, returnable in weekly instalments
and reinvesting these weekly instalments, which is owned
exclusively by the appellant, and that the same idea has
been adopted by the appellees in their plan of establishing
industrial banks.

It is, we think, clear from the evidence that the respec
tive plans of banking under consideration are not substan-
tially similar, but are fundamentally different. The two
plans are clearly differentiated by experts showing that one
is operated upon a mutual basis, the members or borrow-
ers subscribing to the capital stock and participating in the
profits and losses; while the other is operated upon a fixed
capital, the stockholders being the managers and proprie-
tors of the banking institution, and the borrowers and sav-
ers not participating in the profits and losses. The appel-
lant contends that the letter and table filed with his bill
show that his plan is substantially the same as the "Morris
plan." This contention cannot be sustained. The wording
of the letter plainly conveys the idea that the plan was mu-
tual in its character. This interpretation of the letter is
sustained by the by-laws of the "Merchants and Mechanics
Savings Association," which admittedly embody appellant's
whole scheme and plan of banking. The table merely shows
a simple calculation of profits to be derived from a given
sum in accordance with the "Stein plan," the theory being
that the periodical payments and interest would be imme-
diately re-loaned on similar terms.

The evidence of those who united with the appellant,
Stein, in organizing the Merchants and Mechanics Savings
Association of Newport News, which he claims to be the
sole and complete embodiment of his system, is overwhelm-
ingly to the effect that the scheme was not original but was
an old one which had been in operation in Europe for many
years, and that Stein acquired his knowledge of the system
in Europe from whence he emigrated to America in 1892.
The witness, Rosenbaum, who was an active officer of the
Newport News corporation, says he never heard of any
scheme of proprietorship from the organization of the com-
pany in 1901 until about 1914. This testimony of Stein's
own witness, who was in a position to know, would alone
seem to be sufficient to show that the present claim of in-

vention and property was conceived after Stein had seen the unusual growth and prosperity of the "Morris plan."

If, however, appellant had originated the scheme or idea of banking of which he claims to be the owner, he could not have a property right in such a method or idea for conducting business without any physical means or devices for carrying it out. In other words, he could not put such an idea into operation without it at once escaping his own grasp and becoming the property of mankind. *Bristol* v. *E. L. A. Society,* 52 Hun. 161, 5 N. Y. Supp. 131; *Burrell* v. *Chown* (C. C.), 69 Fed. 993; *Bristol* v. *E. L. A. Society,* 132 N. Y. 264, 30 N. E. 506, 28 Am. St. Rep. 568; *Hamilton Mfg. Co.* v. *Tubbs* (D. C.), 216 Fed. 401.

In *Bristol* v. *E. L. A. Society,* 52 Hun. 161, 5 N. Y. Supp. 131, *supra,* it is said: "It is difficult to conceive how a claim to a mere idea or scheme, unconnected with particular physical devices for carrying out that idea, can be made the subject matter of property. So long as the originator of the naked idea, whether, germinating under the laws of metaphysics, it be regarded as Platonic or Cartesian in its make-up, keeps it to himself, it is his exclusive property, but it ceases to be his own when he permits it to pass from him." As further said in the case cited, such ideas in their relation to property, belong to the claimant as long as he keeps them. But if he permits them to go he cannot follow them.

In *Hamilton Mfg. Co.* v. *Tubbs, supra,* it is said: "Where an idea or trade secret or system cannot be sold or negotiated or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure; otherwise, it must follow the law of ideas and become the acquisition of whoever receives it."

In the case of *Haskins* v. *Ryan,* 71 N. J. Eq. 575, 64 Atl. 436, a leading authority on the subject, the court, in a luminous discussion of this subject, says: "The means of carrying out the plan, of giving effect to the idea, lay, therefore,

beyond his control. It was an idea depending for its realization upon the concurring minds of many individuals, each of them unbound by contract and free to act as he chose. Such a project or idea can scarcely be called property. It lacks that dominion, that capability of being applied by its originator to his own use, which is the essential characteristic of property. It differs fundamentally from. the secret process or patented invention which is capable of material embodiment at the will of the inventor alone. It is worthless unless others agree to give it life. It was, as far as complainant was concerned, an idea pure and simple. Now it has never, in the absence of contract or statute, been held, so far as I am aware, that mere ideas are capable of legal ownership and protection. Says Lord Brougham, in delivering his judgment in *Jeffreys* v. *Boosey*, 4 H. L. Cas. 965, *'Volat irrevocable verbum,'* whether borne on the wings of the wind or the press, the supposed owner instantly loses all control over it. * * * He has produced the thought and given it utterance, and *eo instanti* it escapes his grasp."

The contention of complainant that he imparted his plan or scheme of banking to Morris, as his attorney, in confidence and with a restriction against his using the same, and that Morris violated such professional confidence when he established the "Morris plan" is not tenable. It appears that several years after Stein had united with others in organizing the Merchants and Mechanics Savings Association of Newport News, through which organization he made known to the public his so-called scheme and method of doing business, he approached Morris with the request that he would unite with him in organizing a similar savings association in the city of Norfolk. Morris did unite with Stein in an effort to organize such a company, but the effort resulted in failure, and thereupon Morris' connection with the matter and with Stein ended. The preponderance of the evidence shows that no scheme was committed to

Morris in confidence; on the contrary, the very thing he was asked to do necessarily involved his discussing Stein's plan and making it known to the public. This Stein did himself and in no other way could a company have been established in Norfolk or elsewhere.

No communication to a lawyer for the express purpose of having it brought to the attention of the public, or communicated to another, is privileged. Weeks on Attorneys at Law (2nd ed.), sec. 151; *Bartlett* v. *Bunn,* 56 Hun. 507, 10 N. Y. Supp. 210; *Commonwealth* v. *Bacon,* 135 Mass. 521. It is true that an attorney should be held to the highest good faith in dealing with a client, but it is obvious, in the present case, that the charges of disloyalty on the part of Morris, if he ever was attorney for Stein, are wholly without merit.

The appellees have urged upon us other grounds of defense to the claim asserted by the appellants, but in the view we have already taken of the case it is not necessary to refer to them.

In conclusion, we are of opinion that the claims of the appellants are without foundation in law or in fact, upon any view of the case. The decree complained of, denying the relief prayed for, is, therefore, plainly right and must be affirmed.

*Affirmed.*