# Wytheville

### VIRGINIA-LINCOLN FURNITURE CORPORATION v. SOUTHERN FACTORIES AND STORES CORPORATION.

June 14, 1934.

Present, Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*John P. Buchanan, Leon M. Bazile* and *Alfred J. Kirsh,* for the plaintiff in error.

*Smith & Gordon,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

For brevity the plaintiff in error, which was the defendant below, will be referred to as the defendant and the defendant in error will be referred to as the plaintiff.

The plaintiff recovered a verdict and judgment for $20,500.00 against the defendant. The action was begun by notice of motion for judgment. A writ of error brings the case here. It is sought to have the verdict set aside

and the judgment reversed on account of the many errors asserted in the petition.

In 1928 and for some time prior thereto, there were two furniture manufacturing plants located at Marion, Virginia, one known as the Virginia Table Company, Incorporated, and the other known as the Lincoln Furniture Manufacturing Company, Incorporated. These corporations were owned and operated by the Lincoln interests. C. C. Lincoln, Jr., was president and J. P. Buchanan was secretary and general counsel of both corporations. In October, 1928, the directors of the Virginia Table Company, Incorporated, in contemplation of a proposed merger of the two corporations with a number of retail furniture stores throughout the country, adopted a resolution authorizing and directing C. C. Lincoln, Jr., and others to secure options on different furniture units, to execute option contracts and to do all things necessary in that behalf.

At that time the plaintiff was a Virginia corporation, with its principal office in Richmond. It was operating a chain of furniture stores in North and South Carolina. Its president was Rives Fleming. Kimball was the general manager, Murray the treasurer and auditor, and James B. Murphy, a large stockholder and general counsel.

In October, 1928, Lincoln and Wahab, representing the Virginia Table Company, Incorporated, negotiated an option with the representatives of the plaintiff for its chain of stores and negotiated another option with the Cameron Stove Company, for its business. At this time these authorized representatives employed the plaintiff to secure other options on other furniture stores throughout the south, and according to the great preponderance of the evidence, the Virginia Table Company, Incorporated, through its representatives, agreed to pay the plaintiff $1,000.00 for each option secured. The plaintiff secured eleven options, on stores other than those of the plaintiff, which according to the evidence were acceptable to the Virginia Table Company, Incorporated. The

cost to the plaintiff in securing these eleven options amounted to $8,537.27. The stores of the plaintiff were to be taken over on January 3, 1929.

There was considerable delay in effecting the consolidation and some of the options which had expired had to be renewed. The renewals were secured by the plaintiff.

On and after January 31, 1929, at the request of the Virginia Table Company, Incorporated, the plaintiff operated its stores in accordance with directions given by the Virginia Table Company, Incorporated, and complied with those directions.

After the eleven options had been secured by the plaintiff for the Virginia Table Company, Incorporated, the former was engaged and employed by the latter to visit the various stores which were to be brought into the consolidation, make inventories of the stock, appraise the accounts and perform all other services necessary in that connection. The expenses for performing these services were advanced by the plaintiff, but the Virginia Table Company, Incorporated, agreed to pay them. They amounted to $8,826.80.

Later, on account of the general business depression, all efforts to consolidate the stores in accordance with the plan failed and the venture never materialized.

In the meantime the Virginia Table Company, Incorporated, transferred all of its assets, which aggregated about $1,500,000.00, to the defendant and later was dissolved.

The plaintiff instituted its action by notice of motion against the Virginia Table Company, Incorporated, and Virginia-Lincoln Furniture Corporation (formerly the Lincoln Furniture Manufacturing Company, Incorporated, whose name was changed by charter amendment) and alleged that the two corporations had the same officers, directors and stockholders; that the Virginia Table Company, Incorporated, transferred all of its assets to the Virginia Lincoln Furniture Corporation, and the latter corporation assumed all of the liabilities of the Virginia Table Company, Incorporated, and that on December 26,

1929, the Virginia Table Company, Incorporated, was dissolved by consent of all of its stockholders.

It was alleged that the Virginia Table Company, Incorporated, desired to expand its business and to effect a merger of all the stores operated by the plaintiff and such others as could be obtained, with its furniture manufacturing business.

In paragraph three of the notice it was alleged that in October, 1928, * * * "the said defendant, in the said city of Richmond, Virginia, and in pursuance of its said purpose, requested the said plaintiff to secure for it options for the purchase of said stores in various parts of the country, and then and there undertook and faithfully promised said plaintiff to pay it the sum of one thousand dollars for each and every such option secured by it for said defendant, and said plaintiff thereafter gave to said defendant an option to purchase its own said stores; and said plaintiff, relying upon said request, promise and undertaking of said defendant, did, at great expense to said plaintiff, to-wit, the sum of eight thousand five hundred and thirty-seven and 27/100 dollars ($8,537.27), secure for and deliver to said defendant eleven options on the following furniture stores, which said options were approved by said defendant," * * *

Then follows a list of the stores upon which the plaintiff secured options.

In paragraph four, it was alleged: "That after the said options were secured and given by said plaintiff for and to said defendant, as aforesaid, to-wit, on the _____ day of January, 1929, the said defendant, in the said city of Richmond, and at various other places, requested the said plaintiff to visit the various stores on which it held options, and take inventories thereof, appraise the accounts and bills receivable, adjust taxes and insurance, secure lease-holds, and do sundry other acts, preliminary and necessary to the exercise of the said options by said defendant, and then and there undertook and faithfully promised said plaintiff to pay it for its expenses and

services in that behalf; and said plaintiff, relying upon said request, promise and undertaking of said defendant did visit said various stores and take inventories thereof, appraise the accounts and bills receivable, adjust taxes and insurance, secure lease-holds, and do sundry other acts, in anticipation of the exercise of said options by said defendant, and as directed by said defendant, in the doing of which said plaintiff expended and furnished for and on behalf of said defendant money and services to a large amount, to-wit, seventeen thousand seven hundred and twenty-six and 80/100 dollars ($17,726.80), as shown by the itemized statement thereof which is hereto annexed; yet the said defendants, although often requested, have failed and refused and still refuse to pay the said sum of $17,726.80 or any part thereof."

In paragraph five, it was alleged: "That after the said options were secured and given by said plaintiff for and to said defendant, as aforesaid, the said defendant assured said plaintiff that it would exercise said options and effect the said merger, and from time to time the said defendant, while making financial arrangements for effecting said merger, requested the said plaintiff to secure extensions of said eleven options, and requested and required said plaintiff after January 31, 1929, to keep a separate and distinct set of books, and to change its method of business and vary its method of sales and operations with all possible speed, and to purchase large supplies and increase its inventories, and to operate its business for the benefit of said defendant, all as directed by said defendant, and which said plaintiff then and there did at the special instance and request of said defendant, and in consideration of which the said defendant undertook and faithfully promised said plaintiff to reimburse it for all expense, loss and damage sustained by it on account of its compliance with said requests and directions of said defendant; and thereafter, to-wit, on the 19th day of July, 1929, the said defendant requested said plaintiff to again renew its said options and to secure renewals of

other of said options, which the said plaintiff did, and in consideration thereof and of the compliance by said plaintiff with the said request and directions of said defendant, said defendant then and there undertook and faithfully promised said plaintiff that it would exercise the said option given to it by the plaintiff and consummate the said proposed merger; yet the said defendants, well knowing that their failure to exercise said option and consummate said merger would entail great loss and damage to said plaintiff, and although often requested to comply with said agreements, failed and refused and still refuse to exercise said option and/or consummate said merger or to reimburse said plaintiff for the expense, loss and damage sustained by it on account of its compliance with said requests and directions of said defendant; and the plaintiff says that by reason of the premises aforesaid its said business was disorganized, and its inventories unduly increased, and its credit impaired, and its sales and profits reduced, all to the great loss and damage of said plaintiff."

Attached to the notice was an account of the various items claimed to be due. The account contained a charge of $11,000.00 for the options secured and a charge of $17,726.80, covering the expense of taking inventories, and other work in that connection, of the stores which were to be brought into the consolidation. The last item in the account, which was embraced in paragraph six of the notice, was for loss and damage to the business of the plaintiff. For this, the plaintiff claimed $75,000.00. The aggregate of the account was $103,726.80, the total amount claimed in the notice.

Attached to the notice and the account was an affidavit of Rives Fleming, in which he certified that the claim of the plaintiff against the defendant amounted to $103,726.80. The affidavit was made before a notary public for the city of Richmond, but a copy was not certified by the clerk of the court and served on the defendants.

On the 11th day of August, 1931, the return day of the

notice, the plaintiff appeared in court and asked for judgment on the notice. At that time the defendant had not° made its appearance, though it had been duly served with the notice. Not having responded to the notice the court granted judgment in favor of the plaintiff for $28,-726.80, which represented the items of $17,726.80, charged for the inventories and the $11,000.00 charged for the options. In the order of the court it was recited that the said two items were liquidated damages, but as the item of $75,000.00 represented unliquidated damages, the case would be continued for trial of the damages claimed under that item.

Later, at the same term of court, the defendant appeared and moved to vacate the judgment which had been rendered, on the ground, which was satisfactorily established, that the pleas of the defendant had been sent to the clerk of the court by registered mail in due time for filing in the proceeding, but through the negligence of the postal employees in the post office in Richmond, they were not delivered in time to the clerk. When this fact appeared to the court the judgment was set aside.

The plaintiff assigns cross-error to the action of the court in setting aside the judgment. Without going into details and a discussion of the point, we think the court properly set aside the judgment because Code, sections 6046 and 6133, were not complied with in that it does not appear that the copy of the affidavit served on the defendant was certified by the clerk of the court. There may be other good reasons for vacating the judgment, but we think the plaintiff's failure to follow the statute is sufficient.

Later, after the judgment was set aside, the defendant filed pleas in abatement. The jurisdiction and venue of the court were questioned, but these pleas were overruled. Then the defendant demurred to the notice on the ground that there was a misjoinder of causes of action. The demurrer was overruled and the defendant was required

to file its pleas to the merits. The pleas and grounds of defense were filed.

After a long trial, before a special jury, in which a great volume of testimony was heard, and numerous objections and motions were made and disposed of, the jury returned a verdict for the plaintiff for $20,500.00, upon which judgment was rendered.

It will be noted that the amount of the verdict is just $673.20 more than the aggregate of the $11,000.00 item for the options and the amount of $8,826.80, which was the actual cost of the inventories made by the plaintiff for the defendant.

There are twelve assignments of error. The twelfth one is "such additional errors as may be filed in a supplemental brief." This assignment can not be noticed.

Many of the assignments become unimportant in view of the ultimate conclusion we have reached. For the purpose of brevity and clarity, we will at this time state our conclusion, which is, that the judgment should be amended to embrace only the $11,000.00 for the options and the $8,826.80 for the actual cost of the inventories, and that it should have been for the sum of $19,826.80, instead of $20,500.00.

The great preponderance of the evidence clearly sustains paragraph three of the notice that the defendant agreed to pay the plaintiff $1,000.00 for each option obtained and that the plaintiff obtained eleven options which were acceptable to the defendant. Therefore, in any event, the plaintiff was entitled to $11,000.00 for the options, and this amount has not been paid.

The actual cost to the plaintiff of taking the inventories was $8,826.80. A bill for that amount was sent to the defendant and approved by it before this litigation was begun. This, with other clear evidence, sustains paragraph four of the notice. Therefore the plaintiff was entitled to that amount which has not been paid. The two items aggregate $19,826.80, and the judgment of the trial court will be amended to that extent.

■ One of the assignments of error is directed to the refusal of the court to sustain the demurrer to the notice on the ground that there was a misjoinder of causes of action. That question is not material since under our view no recovery is allowed under the fifth, or damage, paragraph of the notice and even if the court had sustained the demurrer and eliminated the fifth paragraph, the recovery which we have allowed is embraced in the third and fourth paragraphs of the notice and in no sense could it be said that those two latter paragraphs misjoined causes of action. In paragraph three, a contract whereby the defendant agreed to pay the plaintiff for eleven options at $1,000.00 each was alleged and in paragraph four, a contract was alleged whereby the defendant agreed to pay the plaintiff the cost of taking the inventories referred to. Therefore the error of the court, if it were error .(and we do not so decide), in not eliminating paragraph five upon the hearing upon the demurrer is not material.

■ Again it is insisted that there was a misjoinder of parties defendant. It will be recalled that the Virginia Table Company, Incorporated, and the Virginia-Lincoln Furniture Corporation were joined as defendants. Then it developed that the Virginia Table Company, Incorporated, transferred all of its assets to the Virginia-Lincoln Furniture Corporation and the former became dissolved by the consent of all the stockholders. Motion was made to abate the action as to the Virginia Table Company, Incorporated, but the trial court reserved its decision upon the motion until the conclusion of the evidence, at which time it required the plaintiff to elect as to which defendant it would continue to proceed against. The plaintiff elected to proceed against the Virginia-Lincoln Furniture Corporation only and the action against the Virginia Table Company, Incorporated, was dismissed.

Under the involved facts and circumstances of this case we find no error in this action of the court.

■ It is assigned as error that the court overruled the

pleas in abatement to the jurisdiction of the court, because the cause of action did not arise in the city of Richmond and neither of the defendants had its principal office there but both had their principal office in Marion, Virginia.

The evidence very clearly shows that the agreements alleged in paragraphs three and four were made in Richmond and were to be performed there. Paragraph five, regarding the unliquidated damages, having been eliminated from our consideration, there can be no doubt of the jurisdiction and venue of the Richmond court.

Three instructions were given the jury which permitted it to find damages for the plaintiff other than on a *quantum meruit* for the breach of an implied contract to pay for personal services. Under these instructions the jury was authorized to find damages against the defendant, for loss and loss of profits to the plaintiff in the operation of its stores under the direction of the defendant. The court permitted the plaintiff to introduce evidence which tended to show that its business had been demoralized by reason of the failure of the defendant to effect the contemplated merger. Evidence was also allowed which tended to show that over a period of time the plaintiff had, at the request of the defendant, changed its system of doing business, and this occasioned a loss, and that during this time the loss amounted to a large amount, which was arrived at by showing the difference in the results accomplished in the same months of the prior year. The three instructions were objected to because the amount due the plaintiff, if any, was governed by the *quantum meruit* for services performed under an implied contract.

A discussion of this question is of no importance here. It may be assumed that the assignment is good and that the court committed error in granting the three instructions, still the result which we reach remains unaffected. In passing, however, the evidence of loss of profits offered to support those instructions was too speculative, remote and conjectural to warrant an instruction even if the

plaintiff was entitled to damages for loss of profits in this action.

■ Another assignment is directed to the refusal of the court to grant five instructions offered by the defendant. The plaintiff rendered to the defendant an account of the cost and expenses which had been incurred in taking inventories of the stock and accounts of the various stores which were to be brought into the merger. This account amounted to $8,826.80, and when it was received by the defendant, it, through its president, accepted it and acknowledged the obligation to pay it. The defendant instructed the plaintiff to deduct that amount from an account the plaintiff owed the defendant for furniture and send the difference to the defendant. This was not done. The amount of $8,826.80 represented the actual cost and expense of taking the inventories and when this action was instituted the plaintiff in its notice increased the amount to $17,726.80. The latter amount is the sum now claimed for the same inventory work, for which the plaintiff had previously claimed only $8,826.80. When the difference between the two amounts was being inquired into, it developed that the plaintiff, when this action was brought, decided to charge, not only the actual salaries of the employees used in taking the inventories, but a profit on their services. This was never contemplated by anyone connected with the case until the action was instituted and evidently it was an afterthought. If litigation had not ensued the amount would never have been increased. The five instructions, offered by the defendant and refused by the court, would have limited the amount of recovery of the plaintiff for the inventory services to the amount of $8,826.80, which had been previously agreed upon by the parties. But the court was of opinion that the plaintiff should not have been limited to that amount and refused the instructions. In this we think the court erred, for under the evidence, which is not questioned, the amount of $8,826.80, had been agreed upon. That amount was correct and it was carried on the books of

the plaintiff as a charge against the defendant. In the judgment which this court will enter, the correct amount for the inventories will be fixed at $8,826.80.

On July 19, 1929, the plaintiffs claimed that the president of the defendant entered into an .oral contract whereby it was agreed with the plaintiff that the defendant would, in event the bankers would not finance the proposed merger, place its assets with those of the stores and form an individual merger and arrange the finance of it later and in consideration of the defendant's promise, the plaintiff renewed the options. Evidence of this oral agreement was admitted over the objection of the defendant but the court reserved the privilege of striking out such evidence later if it appeared to be improper. The basis of the objection was that such evidence was contradictory of a written contract between the parties of July 20, 1929, wherein it was provided that there were no verbal agreements in addition to or in conflict with the writing. At the conclusion of the testimony the court ruled that such evidence of the oral contract was improper and struck it out. The defendant contends that the failure of the court to refuse to admit the evidence when it was offered instead of admitting it and later striking it out was prejudicial and that instructing the jury to disregard such evidence could not cure the injury done. A great deal of this objectionable evidence appears in the record.

In passing upon this point on the motion to set aside the verdict the trial court, speaking through the presiding judge, the Honorable Frank T. Sutton, Jr., had this to say:

"The evidence as to the oral contract above, presented one if those situations during the trial difficult to handle until the court had heard all of the evidence in support thereof. Such instances are not infrequent and the danger of working a prejudice is greater when the evidence is excluded without a full comprehension of its scope, than by allowing it to come in and afterwards directing the jury to disregard it. It presented one of those situations where the trial court must pursue that course most

consonant with justice and yet conduct the business of the court in a practical way. In the instance referred to there was nothing in the evidence tending to influence the passions of the jury, nothing to prejudice them for or against either party, and upon the conclusion of the evidence in this phase of the case, the court promptly instructed the jury to disregard all evidence touching such a contract, and afterwards, by written instruction, directed them to disregard such evidence. It is not every irrelevant statement the jury hears that results in prejudice and justifies a mistrial or the setting aside of the verdict. To justify such action there must be something in the nature of the evidence likely to inflame the passion or instill a prejudice in the minds of the jury. The jury in this case was composed of men of unusual qualifications and the court thinks no prejudice resulted to the defendant."

We think the court gave satisfactory reasons for its action and we find no reversible error in its ruling on this point.

In *Washington & O. D. Ry.* v. *Ward's Adm'r,* 119 Va. 334, 89 S. E. 140, 142, the court said: "A judgment ought not to be reversed for the admission of evidence * * * which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence * * * has been prejudicial to the adverse party. A different rule would result in an intolerable handicap upon the *nisi prius* courts."

It is claimed that the court instructed the jury that the Virginia-Lincoln Furniture Corporation was liable for the obligations of the Virginia Table Company, Incorporated. This is assigned as error.

The defendant contends that the Virginia Table Company, Incorporated, transferred its assets to the Virginia-Lincoln Furniture Corporation under a sale, and not by reason of a merger of the two corporations, therefore the Virginia-Lincoln Furniture Corporation never having assumed the obligation due the plaintiff the latter has no claim against the Virginia-Lincoln Furniture Corpora-

tion. If this contention were borne out by the evidence there might be merit in it. However, the correspondence and other evidence convincingly shows that there was a practical merger of the two corporations and that the Virginia-Lincoln Furniture Corporation knew of the plaintiff's claim when the two corporations consolidated. It further shows that the ownership of the stock in both corporations was the same; that they were conducted under the same executives and with the same office force and in a letter from the secretary this was written: "It is therefore resolved to consolidate and it was considered by the board of directors that the simplest way would be to relinquish the charter of one corporation after it had conveyed its assets to the other." Again in another of the letters from the secretary of the corporations to the State Tax Commissioner it was stated that the two corporations were "owned in their entirety in the same proportion by the same stockholders and have the same officers and directors and are now jointly operated by the same general officers and directors and are now jointly operated by the same general office and bookkeeping and labor force, have determined to continue their business under the charter of the Lincoln Furniture Manufacturing Company, Incorporated (to be amended)." * * *

There is other correspondence and other evidence which shows that there was, in effect, a merger of the two corporations and that the Virginia-Lincoln Furniture Corporation knew of the plaintiff's obligations before the merger. Under the evidence the court instructed the jury in instruction 1-A, as follows:

"The court instructs the jury that if they believe from the evidence that the Virginia Table Company, Incorporated, sold all of its assets amounting to about $1,500,-000.00 to the Virginia-Lincoln Furniture Corporation in consideration of the assumption by the latter of indebtedness of about $333,000.00 due by the former for the purpose of uniting the two businesses, with knowledge by the purchaser, or its representatives, that the plaintiff had an

unsettled claim against the Virginia Table Company, Incorporated, that thereupon the Virginia Table Company, Incorporated, was dissolved, then the Virginia-Lincoln Furniture Corporation is liable in this action for any amount which the jury may believe from the evidence and other instructions the plaintiff would have been entitled to recover from the Virginia Table Company, Incorporated."

Under the evidence and Code, sections 3821, 3822 and 3823, the court was warranted in granting the instruction.

██ It was contended that the court should not have admitted the testimony of the witness James B. Murphy, who was introduced as a witness for the plaintiff because he was the attorney of the defendant and his testimony was therefore privileged and that the defendant had not waived the privilege.

This point was so convincingly disposed of by Judge Sutton in the written opinion filed in this case that we adopt it as a part of our opinion. It follows:

"It is necessary to recall the attendant circumstances in passing on this objection. Prior to any employment of the witness by the defendant, the witness had been and was at the time, the general attorney for the plaintiff corporation, which fact was known to the defendant. The witness was the owner of a large block of the plaintiff's stock. The brief for the defendant corporation states that he was the owner of a majority of the plaintiff's stock. At this time both the plaintiff and the defendant were interested in a merger of furniture stores in the eastern and southern portions of the United States. Had this merger been effected both parties then thought it would be considerably to their interest, and in their separate ways were working towards this end with constant communications being sent back and forth between the representatives of the plaintiff and the representatives of the defendant, as to the progress being made and as to the ways and means of carrying out the projected venture. There may be many instances of communications between

counsel and client which are not privileged. The rule in Virginia is stated in *Lyle* v. *Higginbotham,* 10 Leigh (37 Va.) 63. To have excluded all the testimony of Murphy under general objections would have seriously prejudiced the plaintiff's case and suppressed evidence of facts not affected by any rule of privileged communications. Because of its tendency to suppress truth the rule should always receive a strict construction. 28 R. C. L., page 550, section 140. No secrets were involved. Lincoln, president of the defendant corporation, could have been called to the stand and required to disclose the same facts.

"There are two, possibly three, outstanding cases in Virginia, dealing with this subject-matter. They are: *Lyle* v. *Higginbotham,* 10 Leigh (37 Va.) p. 63; *Chahoon* v. *Commonwealth,* 21 Gratt. (62 Va.) p. 822; *Stein* v. *Morris,* 120 Va. at p. 396, 91 S. E. 177.

"The *Chahoon Case* involved the disclosure to counsel by one accused of crime. As the accused was exempt from going on the witness stand, he could not have been required to testify as to the matter communicated to counsel. This distinguishes this case from a civil case. It must have been recognized by Judge Moncure that there was such a distinction, for the case of *Lyle* v. *Higginbotham, supra,* had been decided thirty years before, yet in the *Chahoon Case,* Judge Moncure intimates that the question there involved was a matter of first impression in Virginia. That being so, he did not intend to overrule anything said in the *Lyle* v. *Higginbotham Case,* but must have considered the point in the *Chahoon Case* a different one. *Lyle* v. *Higginbotham* has never been overruled and must be said to still express the law in Virginia. In the course of that opinion, Judge Tucker said: " 'But several things must concur to bring a case within the rule. The matter must have been one of professional confidence; it must have been at the time a secret, for if known to all the world, there was no reason for further concealment. The disclosure must be, *in invitum,* as it respects the client; and lastly, if it might be forced from the client by

the rules of the court, *pari ratione,* it may be drawn from the attorney.'

"The testimony of Murphy shows that these several things did not concur and the objection to the testimony was properly overruled.

"In *Stein* v. *Morris,* 120 Va. at p. 396, 91 S. E. 177, it is said:

" 'No communication to a lawyer for the express purpose of having it brought to the attention of the public or communicated to another is privileged.'

"In 28 *Ruling Case Law,* pp. 533, 561, 562, 563, 566 and 571, will be found a statement of the law as to when an attorney will or will not be permitted to disclose communications from his client. No rule is found there which would debar James B. Murphy from giving the testimony heard in this case."

The trial of the case in the court below consumed two weeks. The pleadings, motions and affidavits were voluminous. They were somewhat involved and did not tend to clarity. The evidence was long and tedious. Into the trial there no doubt crept errors of law. Some of the instructions are subject to just criticism and under different circumstances they might warrant a reversal of the judgment. Possibly the demurrer to the notice should have been sustained and the "damage" count eliminated. There were many difficulties confronting the court in the trial of this case, but upon the whole the amended judgment which this court will enter will meet the demands of justice.

Under section 6365 of the Code, "The appellate court shall affirm the judgment * * * if there be no error therein, and reverse the same in whole or in part, if erroneous, and enter such judgment * * * as to the court shall seem right and proper and shall render final judgment upon the merits, whenever in the opinion of the court the facts before it are such as to enable the court to attain the ends of justice. * * *"

The great weight of the evidence shows that the de-

fendant owes the plaintiff $11,000.00 for the options. It conclusively shows that the defendant owes the plaintiff $8,826.80 for taking the inventories. These two amounts are justly due the plaintiff under the facts before us. Upon a new trial, if we should award one, there is no reason to believe that different evidence would be introduced which would affect the result. The facts before us are sufficient to enable this court to attain the ends of justice. Under section 6365 of the Code, this court will dispose of the case and enter a final judgment upon the merits for the plaintiff for the sum of $19,826.80 with interest from January 1, 1930, and costs. *Atlantic, etc., Ry. Co.* v. *A. M. Walkup Co.,* 132 Va. 386, 112 S. E. 663; *Crews* v. *Sullivan,* 133 Va. 478, 113 S. E. 865; *Blenner* v. *Vim Motor Truck Co.,* 136 Va. 189, 117 S. E. 834; *Queen Ins. Co.* v. *Perkinson,* 129 Va. 216, 105 S. E. 580; *Duncan* v. *Carson,* 127 Va. 306, 103 S. E. 665, 105 S. E. 62; *Fourth Nat'l Bank* v. *Bragg,* 127 Va. 47, 102 S. E. 649, 11 A. L. R. 1034.

The judgment is amended as above indicated and affirmed.

*Affirmed.*