PRESENT: All the Justices

JULIA CAIN, ET AL.

OPINION BY
v.  Record No. 141105        JUSTICE CLEO E. POWELL
                              JUNE 4, 2015
JOE LEE

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

Julia Cain and her daughters Raven and Reannah Cain (collectively, the "Cains") appeal the trial court's decision to give a jury instruction that they contend was an incorrect statement of the law.  The Cains also appeal the decision of the trial court excluding certain impeachment evidence as well as evidence of the defendant's post-accident conduct.

I.  BACKGROUND

On May 31, 2008, the Cains were driving on Route 1.  As their vehicle slowed due to traffic, a vehicle driven by Joe Lee ("Lee") rear-ended them.  The impact caused the Cains to collide with the vehicle in front of them.

A state trooper responding to the accident determined that Lee was possibly intoxicated, due to Lee's appearance and the presence of a strong odor of alcohol.  The state trooper administered a field sobriety test to Lee, which Lee failed.  Lee subsequently consented to a preliminary breath test ("PBT"), which registered a blood alcohol content of .24.  Lee was then arrested.

When he was brought before a magistrate, Lee refused to submit to a breath test. As a result, Lee was charged with unreasonably refusing to submit to a breath test, in violation of Code § 18.2-268.3, and driving under the influence ("DUI"), in violation of Code § 18.2-266. Lee subsequently pled guilty to the DUI. As part of a plea bargain, the Commonwealth agreed to nolle prosequi the unreasonable refusal charge.

At the time of the accident, none of the Cains complained of any injuries. However, Raven later complained of neck pain and general soreness. She sought medical treatment, but was not diagnosed with a particular medical condition. Julia also sought medical treatment related to the accident for unspecified injuries. Reannah saw a doctor for a regular wellness visit after the accident, but was not treated for any specific medical condition related to the accident. The Cains were fully recovered by August, 2008.

On June 22, 2010, Raven filed a personal injury complaint against Lee. Reannah and Julia also filed claims against Lee on June 30, 2010 and February 23, 2011, respectively. Each complaint sought $25,000 in compensatory damages and $350,000 in punitive damages. As Lee did not have insurance, each complaint was also served on Farmers Insurance Exchange ("Farmers"), Julia's vehicle insurance carrier. All three actions were subsequently consolidated into a single action.

On December 10, 2010, Lee was arrested for a second DUI. He was convicted on March 11, 2011 and sentenced to twelve months in jail with nine months suspended. As a condition of his probation, Lee was required to participate in the Virginia Alcohol Safety Action Program ("VASAP") and to abstain from the use of alcohol. When reporting to the VASAP, Lee was required to submit to a breath test. After Lee failed four breath tests, Lee was expelled from the VASAP and required to serve the remainder of his suspended sentence.

On April 15, 2013, the trial court heard Farmer's motion in limine seeking to prevent the Cains from presenting evidence of Lee's second DUI conviction and his expulsion from the VASAP. Lee also moved to exclude the results of the field test administered at the accident scene. The trial court granted Farmers' motion in limine and took Lee's motion under advisement.

At trial, Lee conceded he was liable and the case proceeded for a determination of compensatory and punitive damages. As part of their case, the Cains called Lee as an adverse witness. Lee was asked if he was intoxicated at the time the collision occurred, to which he responded, "I wouldn't say intoxicated. I had been drinking." When he was asked again if he was drunk at the time of the collision, Lee stated "[t]hat's what my paperwork says, .08 to -- yes." The Cains

subsequently sought to impeach Lee's testimony with the results of the PBT. Lee objected on the basis that the results of the PBT were irrelevant because the Cains claim was based on Lee's unreasonable refusal, not the results of the PBT. The trial court denied the Cains request, ruling that, assuming the testimony was relevant, the Cains could not impeach Lee based on testimony they elicited, especially when they knew what Lee's testimony would be.

At the conclusion of the evidence, Lee proffered a jury instruction addressing the disfavored nature of punitive damages (hereafter referred to as "Instruction 10"). The Cains objected, arguing that the instruction was not a correct statement of the law. The trial court approved a slightly modified version of Instruction 10 which stated: "Punitive damages are generally not favored and should be awarded only in cases involving egregious conduct." Notably, during his closing argument, Lee repeatedly emphasized that his conduct was not egregious in nature and therefore punitive damages should not be awarded.

The jury subsequently awarded $5,000 in compensatory damages and $500 in punitive damages to Raven Cain, $5,000 in compensatory damages and $500 in punitive damages to Reannah Cain, and $2,000 in compensatory damages and $500 in punitive damages to Julia Cain. The Cains appeal.

4

II.  ANALYSIS

On appeal, the Cains argue that the trial court erred in giving Instruction 10.  They also take issue with the trial court's decision to exclude the results of the PBT and the evidence of Lee's post-accident DUI and expulsion from the VASAP program.

A.  INSTRUCTION 10

The Cains argue that the trial court erred in giving Instruction 10.  According to the Cains, the instruction does not properly state the law, improperly incorporates the appellate standard of review, and is prejudicial.  We agree.

> When we review the content of jury instructions, our "'sole responsibility . . . is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  Whether the content of the instruction is an accurate statement of the relevant legal principles is a question of law that, like all questions of law, we review de novo.  Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006).

Hancock-Underwood v. Knight, 277 Va. 127, 131, 670 S.E.2d 720, 722 (2009).

Under Code § 8.01-44.5, when a defendant unreasonably refuses to submit to a breath test, the finder of fact may award

5

punitive damages if the evidence demonstrates: (1) the defendant was intoxicated at the time of accident; (2) the defendant knew or should have known "his ability to operate a motor vehicle was impaired;" and (3) "the defendant's intoxication was a proximate cause of the injury to the plaintiff or death of the plaintiff's decedent."  It is undisputed that all of these elements were met in the present case.  Instruction 10, however, further requires the Cains prove that Lee's conduct was "egregious," an additional element not included in the statute.  Accordingly, it was error for the trial court to give Instruction 10.

Furthermore, this case provides yet another illustration of the error addressed in our repeated admonishment about "the danger of the indiscriminate use of language from appellate opinions in a jury instruction."  Blondel v. Hays, 241 Va. 467, 474, 403 S.E.2d 340, 344 (1991) (collecting cases).  We have long recognized that the language used in our opinions may include "argumentative language" about legal matters that is inappropriate for consideration by the jury.  Abernathy v. Emporia Manufacturing Co., 122 Va. 406, 413, 95 S.E. 418, 420 (1918).  Here, Instruction 10 was taken directly from our holding in Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan, 269 Va. 421, 425, 611 S.E.2d 385, 387 (2005), and clearly includes an example of "argumentative language" in the form of this Court's commentary about the favorability of punitive damages.  Such

6

language does not assist the jury in any way; it does not explain the law applicable to the case or aid the jury in arriving at the proper verdict. Rather, given that Code § 8.01-44.5 expressly allows for punitive damages upon the showing specified by the General Assembly, referring to them as "generally not favored" serves only to confuse or mislead the jury.

Additionally, it is worth noting that the punitive damages discussed in Xspedius Mgmt. Co. were common law punitive damages; the punitive damages at issue in the present case are statutory punitive damages. Unlike common law punitive damages, statutory punitive damages have been explicitly approved by the General Assembly. As such, we cannot say, as a matter of law, that such punitive damages are "generally not favored." Indeed, logic would dictate otherwise.

Finding that the trial court erred in giving Instruction 10, we must next determine whether that error was harmless. The mere fact that the jury awarded punitive damages is not, in the present case, sufficient evidence that the error was harmless. "If an issue is erroneously submitted to a jury, we presume that the jury decided the case upon that issue." Clohessy v. Weiler, 250 Va. 249, 254, 462 S.E.2d 94, 97 (1995). Here, Instruction 10 included unnecessary commentary on the propriety of punitive damages and improperly required the jury to consider an element

7

or legal standard that the Cains were not required to prove. It is not illogical that a jury would decrease the amount of punitive damages because the trial court stated that such damages were "generally not favored." Similarly, it is likely that the jury factored the egregiousness of Lee's conduct into its determination of punitive damages. As we cannot definitively state whether Instruction 10 had an effect on the jury's award, we cannot say that the error was harmless.

Accordingly, we will reverse the decision of the trial court and remand the matter for further proceedings. However, we recognize that the issue of post-accident conduct raised by the Cains will likely arise again upon remand.[*] Therefore, we will address that issue here. See Harman v. Honeywell Int'l, Inc., 288 Va. 84, 95-96, 758 S.E.2d 515, 522 (2014) (considering evidentiary issues that would probably arise on remand where the judgment was reversed on other grounds).

### B. POST-ACCIDENT CONDUCT

The Cains argue that the trial court erred in refusing to allow them to present evidence of Lee's subsequent DUI

---

[*] Unlike the trial court's decision to exclude the post-accident conduct evidence, we cannot say that the issue that led to the exclusion of the impeachment evidence will likely arise again on remand. Notably, the impeachment evidence was offered due to Lee's peculiar response to the question of whether he was "drunk at the time of [the] collision." As we cannot say that Lee will give a similarly idiosyncratic answer on remand, we need not address this issue here.

conviction and dismissal from VASAP.  The Cains contend that such evidence demonstrates that Lee is indifferent to the pain and suffering he has caused, thereby making it competent, relevant, and material evidence for determining punitive damages.  We disagree.

This Court has long recognized that a "trial court may exclude evidence when, in the court's sound discretion, its prejudicial effect substantially exceeds its probative value." Boone v. Commonwealth, 285 Va. 597, 602, 740 S.E.2d 11, 13 (2013).  Here, the evidence the Cains sought to introduce has no direct connection to the incident that precipitated the present case. Indeed, Lee's second DUI and dismissal from the VASAP occurred during the pendency of this case.  We further note that, even if offered for the limited purpose of determining the amount of punitive damages, such evidence is "likely to inflame the passion or instill a prejudice in the minds of the jury." Virginia-Lincoln Furniture Corp. v. Southern Factories & Stores Corp., 162 Va. 767, 781, 174 S.E. 848, 854 (1934).  Thus, the post-accident evidence is ostensibly highly prejudicial.

To determine whether the post-accident evidence has any probative value, we first look to the language of the statute on which the Cains base their case, Code § 8.01-44.5.  Where a plaintiff seeks punitive damages based on a defendant's unreasonable refusal, Code § 8.01-44.5 provides that:

9

a defendant's conduct shall be deemed sufficiently willful or wanton as to show a conscious disregard for the rights of others when the evidence proves that (a) when the incident causing the injury or death occurred the defendant was intoxicated, which may be established by evidence concerning the conduct or condition of the defendant; (b) at the time the defendant began drinking alcohol, or during the time he was drinking alcohol, he knew or should have known that his ability to operate a motor vehicle was impaired; and (c) the defendant's intoxication was a proximate cause of the injury to the plaintiff or death of the plaintiff's decedent.

The specific temporal references in the statute are "when the incident . . . occurred," "at the time the defendant began drinking alcohol, or during the time he was drinking alcohol," and "was a proximate cause." Thus, for the purpose of determining whether to award punitive damages, Code § 8.01-44.5, limits a finder of fact to considering evidence of the defendant's knowledge and physical condition leading up to and directly related to the defendant's act. Nothing in the statute allows a finder of fact to consider post-accident evidence that is not directly related to the act in question. As no unrelated post-accident evidence can be considered in determining whether to award punitive damages, such evidence, by definition, has no probative value. Accordingly, the trial court did not abuse its discretion by excluding the post-accident evidence because, in

10

an action under Code § 8.01-44.5, such evidence is entirely prejudicial with no probative value.

### III.   CONCLUSION

For the foregoing reasons, the trial court's evidentiary rulings excluding the proffered evidence of Lee's post-accident conduct was not error, but we will reverse the judgment of the trial court because of its error with regard to Instruction 10. Accordingly, we will remand the matter to the trial court for further proceedings not inconsistent with this opinion.

<u>Reversed and remanded.</u>